Chaffe & Bro. v. Oliver and Wife.

---

CHAFFE & BRO. v. OLIVER AND WIFE.

39    531
76    553

39    531
81    256

39    531
84    282
f 84    283

39    531
90    245

1.  ACKNOWLEDGMENT :  *Of deed by married woman.*
Unless the certificate of a married woman's acknowledgment of a deed show that she executed the deed "without compulsion or undue influence of her husband," the deed is void.

2.  EQUITIES :  *For incumbrances discharged on trust property when trust deed proves void : Subrogation.*
A and wife executed to B a mortgage on her separate real property, to secure a debt to him. Afterwards they executed to C a deed of trust on the same property, to secure a debt to him, and also the mortgage debt to B, which C agreed to pay. The wife's acknowledgment of this deed omitted the words "without compulsion or undue influence of her husband." C, in ignorance that this invalidated the deed, paid the debt to B, and redeemed the land from an intermediate tax sale, and paid after-accruing taxes on it. In a suit in equity to enforce the trust deed, praying specific and general relief, *held,* that the deed was void for want of proper acknowledgment, and C could have no relief against the land for his debt against A ; but that under the prayer for general relief he should be subrogated to B's mortgage lien for the mortgage debt, and be reimbursed the amount paid to redeem the land from tax sale, and for subsequent taxes; and for these a lien be declared on the lands to pay, first, the amounts paid for redemption and taxes, which were a charge on the lands against A and wife and B; and, second, to pay the mortgage debt paid to B. [ENGLISH, C. J., dissenting as to the matter of subrogation.]

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. X. J. PINDALL, Circuit Judge.

*W. P. Grace*, for appellants:

1. The deed under which Mrs. Oliver claims does *not* " expressly set forth that the same is designed to be held exempt from the liabilities of her husband." (*Gould's Digest, p. 766, sec. 8*), and the marital rights of her husband attached, and may be subjected to appellant's claim. *Taylor v. McCoy, 38 Ark., 91; 1 Wash. Real Prop., *p. 277.*

2. Conceding the deed of trust to be void (for argument), still the Busby debt, amount paid to redeem, and subsequent taxes, are a lien upon the land. The Busby mortgage was strictly in accordance with *Gould's Digest, ch. 37, secs. 18 and 21*, and a valid incumbrance. This was paid at the request of appellees, and for their benefit, and appellants should be compensated, or at least substituted to Busby's lien. *Bright v. Boyd, 1 Story Rep., 478 and 494; S. C., 2 Story, 605; Story Eq Jur. (12th ed.), sec. 1237; McLaughlin v. Barnum, 31 Md., 425; Sale v. Crutchfield, 8 Bush. (Ky.), 636; Miner v. Beckman, 50 N. Y., 337; Smith v. Drake, 8 C. E. Green, 302; Shivers v. Simmons, 54 Miss., 520; S. C., 28 Am. Rep., 372, and cases cited; Franklin v. Meyer, 36 Ark., 113.*

3. Even if the deed of trust be void, still by paying off the Busby incumbrance which *was a valid lien on her separate estate*, appellants became in equity subrogated to Busby's lien. (*Neely v. Jones, 16 W. Va., 625, and S. C. 27 Am. Rep., 794*. The same principle applies to the amount paid to redeem the lands.

4. The removal of the Busby lien was for the benefit of her separate estate, and was therein beneficial to it, was contracted on the faith of it, and her estate should be

charged with the amount thus expended. *Dale v. Robert-son, 51 Vt., 20,* and authorities cited; *S. C., 31 Am. Rep., 669; Stillwell and wife v. Adams, 29 Ark., 346; Henry v. Blackburn, 32 Ark., 451.*

5. Appellants being in possession, under color of title, at the time of the redemption and payment of the taxes, were not mere volunteers. The burden was on appellees to show that the tax sale was illegal, and they offer no proof of it.

6. The suit of *unlawful detainer* in the Federal court can not be pleaded as *res adjudicata.* None of the matters in the present bill were or could have been put in issue in that form of action.

7. A decree for appellants could work no injury to Mrs. Oliver. The legal title and right of possession had passed out of her to Busby, with condition broken, before the execution of deed of trust, and if the latter be invalid, the title and right of possession was divested out of her by the sale for taxes and assignment to appellants.

*U. M. &. G. B. Rose,* for appellees:

1. Apt words are used to create a *separate* estate in Mrs. Oliver by the deed to her. *Bispham Equity, sec. 100.*

2. The answer alleges that the tax sale was *void,* and plaintiffs made no proof whatever of their tax title.

As to subrogation the rule is this: Where a person has an interest in property, and in order to protect that interest is forced to pay off a paramount incumbrance, he will be subrogated to the lien of that incumbrance. He must previously have acquired an interest in the property.

If having no prior interest, he pays off an incumbrance, and takes a mortgage to secure him, he must rest on his own mortgage. He is a stranger to the original mortgage. His payment is an extinguishment. (*Nichol v. Dunn, 35 Ark., 129.*) Mrs. Oliver did not request appellants to pay

the Busby mortgage. She signed the mortgage unwillingly, and only because told it' would not bind her property. Appellants paid the Busby mortgage only because they wanted to get a mortgage on the property, and having obtained it they must stand by their election. To illustrate our position, see *Sanford v. McLean, 3 Paige, 117; Shinn v. Budd, 14 N. J. Eq., 234; Nolle & Co. v. Creditors, 7 Martin, N. S., 602; Harrison v. Bisland, 5 Rob., La., 204; Guy v. Duprey, 16 Cal., 195; Woods v. Gilson, 37 Ill., 338; Kitchell v. Mudgett, 37 Mich., 82.*

3.   Contend that there was no contract on Mrs. Oliver's part to bind her separate estate. It devolved upon appellants to show that the contract was by her, and in reality for the benefit of such estate and in reference thereto. *Stillwell v. Adams, 29 Ark., 346.*

4.   The entire contract was made by her husband, and she is no more bound by what he did without her consent or ratification (which was never given or done), than by what was done by Chaffe or any one else. *Bank of U. S. v. Lee, 13 Pet., 107; Parrot v. Nimmo, 28 Ark., 356.*

5.   There is no proof that any of the Busby money was used in making improvements on the land. It was the personal debt of the husband.

6.   The extension of the time of payment of the Busby debt without the consent of Mrs. Oliver, who was merely surety for her husband, released her and the mortgage. (*1 Bish. Mar. Women, sec. 604; Brandt on Suretyship, sec. 22; 1 Jones on Mort., sec. 114*), and when so released, her liability could never be revived without her consent. See also, *Brandt, sec. 79; Kingsbury v. Westfall, 61 N. Y., 356.*

7.   The deed of trust is void. (*Stillwell v. Adams, 29 Ark., 353.*) It is as if it were not.

*Met L. Jones* and *Martin & Martin*, also for appellees:

The deed of trust is void for want of proper acknowledg-

ment. *Little, Trustee, v. Dodge, 32 Ark., 457*, citing *15 Ark., 479; 29 ib., 346; 30 'Ark., 191; 20 ib., 194.* See also *Connor v. Abbott, 35 ib., 347.*

There was no equitable estoppel against Mrs. Oliver. *Herman Law of Estoppel, 235, 237 ; Glidden v. Stuppler, 52 Penn., 400.*

EAKIN, J. Henrietta V., the wife of Lindsay W. Oliver, was the owner, in her separate right, of a plantation, which she had allowed her husband to cultivate and use for his own benefit, and upon which both resided.

In March, 1867, they joined in a mortgage of the plantation, save 160 acres, to Jesse J. Busby, of Memphis, reciting that he had advanced to them, and agreed to continue advancements of supplies of cash and provisions to enable them to cultivate a crop for the current year, not to exceed $6,000; and further, that said Lindsay W., was indebted to him upon two notes executed in 1866 for $800 each. To secure this indebtedness the mortgage was executed.

It seems that afterwards, in working the plantation, Oliver had become indebted to appellants, who were merchants in New Orleans, in a sum amounting on the third day of April, 1869, to about $2,750. The Busby debt had been reduced to about $3,000, or perhaps, had never exceeded it.

At this date they joined in signing a deed of trust, of all the plantation, and some personal property. for the benefit of complainants, John Chaffe & Bro. It recited that Oliver was indebted to them in the sum of $2,750, for which he had at that date executed his note for that amount, at nine months, bearing eight per cent. interest; and that they had agreed to accept his draft in favor of Busby, at nine months, for $3,000 more. It was provided that if said

Lindsay W., should pay off all said indebtedness, at maturity, with interest and commissions, and should ship to complainants all his crop of cotton raised upon the place, the deed should be void. Otherwise the trustee was authorized to take possession and sell   This deed of trust, although signed by Mrs. Oliver, was not acknowledged as then required by law, to make it valid against her. The certificate of acknowledgment, made by a proper officer, shows her appearance and acknowledgment in the absence of her husband, but fails to show that she denied any compulsion or undue influence on his part.

It is very certain, however, that neither Oliver, nor his wife, nor complainants, were then, or for several years afterwards, aware of the defect in the acknowledgment, although Mrs. Oliver, as will be hereafter shown, denies that she knew of the legal effect of the instrument upon her separate property, or that she had intended to bind it. Complainants, resting upon the supposed security of the trust deed, proceeded in good faith to pay the Busby draft when due. The debt remained unpaid, and meanwhile the property was sold for the taxes of 1873, and was purchased by a brother of Mrs. Oliver. In January, 1875, the property was sold by the trustee under the deed, and purchased by complainants at the sum of $5,000. They took possession, redeemed the certificate of purchase at the tax sale, and have continued to pay taxes since. Oliver continued for several years to hold under them as a tenant, paying rent and shipping them cotton, until the year 1879, when complainants refusing through their agent to rent to him longer on account of his failure to pay rent, he refused to redeliver, and claimed the property as his wife's. Complainants brought forcible detainer in the Federal court, and failed in the suit. They then filed this bill on the eleventh day of October, 1879, setting up substantially

the foregoing facts, and praying general and special relief.

The defense made by the joint answer of Mr. and Mrs. Oliver, is rested upon the grounds that all the negotiations were conducted by the husband, who was cultivating the place for himself, on his own responsibility; that he was not her agent; that none of the debts were contracted for the special benefit of Mrs. Oliver or her estate; that she did not intelligently execute the deed of trust, but that it was procured from her upon assurance made (not however by complainants or their agent) that it was mere matter of form, and would not bind her estate, and that it was never valid.

There were other minor issues with regard to taxes, rents, etc., not affecting the main question of complainants' right to some kind of relief. The cause was heard upon the pleadings, exhibits, and other proof, and the Chancellor denied all relief. Complainants appeal.

As touching Mrs. Oliver, the evidence shows that her actual signature to the deed was voluntary, and that there was no compulsion, either in that or her acknowledgment; and there is no reason to doubt that she intended to acknowledge it in due form of law. The mistake in the certificate was wholly that of the officer. Her defense is that it was not read to her; that she at first refused to sign it, and that she finally did so, on being advised that its effect would not be to bind her separate property. In her answer she does not specifically deny that she understood the purport of its language, or that its *contents* were made known, with its general tenor and objects, although in her deposition she goes further, and says she did not know what was in it.

She asserts that she refused to bind her property, and never meant to do so in signing the instrument, but was

advised, in the presence of her husband, that it would not have that legal effect. It is further quite clear Chaffe & Bro. had no agency in, or knowledge of, such representations, and no suspicion of any reluctance or objection on her part.

Nevertheless, it goes without saying, that, as to her, the deed of trust was void, and complainants' title under it. There is no question made here about the personal property. It is not shown what became of it. The certificate of acknowledgment can not be reformed *in invitum*, upon the proof before us.

Nor, for several reasons, can the instrument, considered within itself, have any efficacy against her, without acknowledgment, as a *contract* for the benefit of her separate property, to pay any moneys advanced by complainants to Oliver. There is no proof that she had any special benefit from the money or supplies, for which Oliver's debt of $2,750 was incurred, and, in terms, she does not bind herself to pay any.

Considered, however, with reference to the Busby mortgage, existing at the time, a very grave question arises, as to whether Chaffe & Bro. may not be entitled, under the general prayer, to subrogation; and with reference to the moneys paid to redeem the land, and to keep up the taxes, whether the deed of trust may not, although void as such, be sufficient, under the circumstances, by virtue of her signature, to raise the complainants from the position of volunteers to that of persons having an interest or a duty to pay them, for their own protection, or the protection of others, to whom they stand in a fiduciary relation.

In this case the complainants, in good faith, supposing the trust deed to be good, had held it as a security for nearly five years. They had meanwhile given to Oliver, the husband, all the advantages he anticipated under it, a

great part of which had inured to the wife, in that her separate property had been saved from sale under the Busby mortgage. It is patent she could not have paid that debt, without transferring the same lien to another. Their rights under the deed had never been questioned. If Mrs. Oliver was herself deceived, and rested under the belief that it gave them none, it is not an accident for which they are responsible. They had no reason to doubt her free assent to the condition of things; and·if she had not questioned their rights, no one else ever could. They finally, in 1875, closed the trust, without any objection. The husband .of the owner takes and holds under them as a tenant. They might reasonably have been thus put off their guard as to any latent claims on the part of the wife. They took the land clouded with the tax sale. It would have been . business stupidity in them not to redeem it. Their own proper interest prompted it, and·the act was beneficial to Mrs. Oliver also, as it restored her equity of redemption. After that, they were receiving rents, and ought to have kept up the taxes, whether they came in *per fas aut nefas.*

This can not be considered as a case of officious intermeddling with the business of another, nor as a mere loan, upon request, for the payment of taxes, neither of which would give a lien. It is a case where one in good faith, supposing property to be his own, discharges, with regard to it, a duty incumbent upon the true owner, which that owner was imperiously required to discharge, to save it from loss; and which, from the relations between the owner and the payer, the latter might well suppose it his right and duty to pay.

It would seem that the denial of a lien in such cases, would be in violation of the equitable maxim "*nemo debet locupletari ex alterius incommodo.*" Upon this maxim courts

of equity, it is said, sometimes create a lien, with a view to justice. (*Story's Equity Jur.*, sec. *1234.* Our equitable jurisprudence is based upon the Roman law, in which it was, says Mr. Story, a broad principle that where a "*bona fide possessor* or purchaser of real estate, pays money to discharge any existing incumbrance or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment, by the true owner, seeking to recover the estate from him." (*Ib.*, sec. *1237 n.*

But we do not need to put this case on so broad a principle, and perhaps, inasmuch as the defective acknowledgment was patent, there might be some doubt as to whether, technically, there was *bona fides*, although there certainly was in reality. Whether the tax sale under which Roane, Mrs. Oliver's brother, purchased was or was not regular and valid, it gave him a lien, under our statute then in force, for the amount of taxes, interest, penalty and costs of advertising, with interest. (*Gantt's Digest, section 5214.*) After his purchase Roane paid the taxes for 1874, and, having an interest in the land, had a lien for them also. This lien passed with the transfer of his interest to Chaffe & Bro., after they had closed the trust and become the purchasers, and was such an interest, independently of their claim under the trust deed, as would authorize them to keep up the taxes and claim reimbursement.

As to the Busby mortgage, it was paid by Chaffe & Bro., in accordance with the terms of the agreement signed by Mrs. Oliver. That was certainly a valid incumbrance on Mrs. Oliver's lands, before the transaction with complainants. Whether it resulted from moneys furnished for the benefit of her separate estate or not, it was, nevertheless, an existing lien, voluntarily created on her part, and, being such, the subsequent payment of it by Chaffe & Bro. was a

payment for the benefit of her separate estate, whether she executed it as principal or surety.

Mrs. Oliver knew of the Busby mortgage when she signed the deed of trust, and, we must suppose, in the absence of clear proof to the contrary, knew something of the nature of the deed of trust, although it was not read to her. Her signature is *prima facie* evidence of that, and the proof to the contrary, fairly considered, does not go further than to establish the fact that she was not advised of its detailed provisions, and *was* advised that its *legal effect* would not be to affect her separate estate; and that she otherwise would not have signed nor attempted to acknowledge it. Circumstances lead to the same conclusion. It is not probable that she would at first have refused to sign it on the ground that she would n,ot bind her separate estate further, unless she had some notice of its contents and import. She is, as the proof shows, a woman of education and intelligence, and we think must have understood the object of the instrument to be the consolidation of the Busby debt with that of Chaffe & Bro., and to extend the time on both, and, because of that, refused to sign it. Upon this view arises the important question whether complainants are entitled to subrogation of the Busby mortgage, which they discharged, and to keep the lien alive for their reimbursement.

With regard to the extension of time, although the parties contemplated that, and Mrs. Oliver must be conceded to occupy the position towards Busby of a surety, it does not follow that before payment by Chaffe & Bro. she was released, and that for two reasons: First, if she were so far acquainted with the object of the instrument as to know in general that it provided for taking up the Busby debt, which we must assume in the absence of clear proof to the contrary, then her signature indicated her assent. Second

and specially, Busby was no party to the arrangement, and there is nothing to show that he in any way bound himself to grant an extension. His acceptance of payment nine months afterwards from Chaffe & Bro., on Oliver's draft, is not inconsistent with the idea that he retained the right meanwhile to foreclose. One may refrain from pressing a claim, in the expectation that it will be paid by another, without releasing a surety. We must consider the equities of this case upon the ground that the estate of Mrs. Oliver was burdened by the mortgage at the time of its discharge by complainants. Subrogation, in its literal and equitable significance, is the demanding of something under the right of another, to which right the claimant is entitled for the purposes of justice to be substituted in place of the original holder. Its phases are various, but it preserves its characteristic features throughout. It is the machinery by which the equity of one man is worked out through the legal rights of another. To effect it in proper cases, where demanded *ex equo et bono*, securities are kept alive which would otherwise be discharged, and which have served their original purposes. New burdens are imposed to take the place of others which have been removed. Marshaling affords a familiar instance of the latter class. The keeping alive of judgments paid by sureties, of the former. But these are not exhaustive statements of its application. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice and good conscience demand its application, in opposition to the technical rules of law, which liberate securities with the extinguishment of the original debt. This equity arises when one not primarily bound to pay a debt, or remove an incumbrance, nevertheless does so; either from his legal obligation, as in case of a surety, or to protect his own secondary right; or upon the request of the original debtor,

and upon the faith that, as against the debtor, the person paying will have the same sureties for reimbursement as the creditor had for payment. And this equity need not rest upon any formal contract or written instrument. Like the vendor's lien for purchase-money, it is the creation of a court of equity from the circumstances.

The present circumstances are, that Chaffe & Bro. relieved the separate property of Mrs. Oliver of a valid incumbrance, upon the faith, justified by her signature, that it was done by her request, and believing that they would have a lien upon the same property for their reimbursement. The instrument which they honestly supposed created that security, turns out to be worthless as a deed of trust. They had *constructive* notice of that, inasmuch as they are held to a knowledge of the law, and might see that it was not properly acknowledged. Yet the actual *bona fides* is unquestioned. They did not *really* know it, or they never would have advanced the money. It appears, further, that the signature of Mrs. Oliver was obtained by representations that it would not affect her separate estate, but that Chaffe & Bro. had no knowledge of, or participated in, such representations, and that Mrs. Oliver, under that belief, signed it without compulsion, and meant to acknowledge it in due form of law.

The representations made to Mrs. Oliver would, of themselves, avoid the deed of trust as to her, as against all participating in them, even if it had been properly acknowledged. But they can have no effect against innocent parties. The deed of trust was void simply because it was not acknowledged. How far it may stand good as indicating the wishes of Mrs. Oliver in a matter affecting her separate property, independently of its efficacy as a conveyance, is a different question. Married women might then bind their separate property by contracts with refer-

ence to it, without acknowledgment. It is further to be observed that, if she signed the deed without compulsion, as she confesses in her deposition, it was her own laches not to have read it, or acquired precise information of its contents, and Chaffe & Bro., who trusted to her genuine signature, can not be considered guilty of negligence in failing to institute inquiries, within the domain of very delicate domestic relations, in order to be assured that the husband had not abused his influence. This has been directly decided by this court in the case of *Collins, Trustee, v. Wassell, 34 Ark., p. 33,* upon the authority of the numerous cases there cited. Her signature is genuine, and they were entitled to rely upon that alone as a request.

Further, it appears that the representations made to Mrs. Oliver were, in effect, that the instrument would not bind her separate property. It would be giving it precisely that effect to hold it null as a lien, and place her *in statu quo,* as if she had never executed it. It does not bind her separate property, nor relieve it. If it had never been executed the property would still have remained bound to Busby until his debt should be paid. It can not be claimed that her attempt to execute it, or the attempt of others improperly to induce her to do so, should have the effect of releasing it. If released at all it was by Chaffe & Bro., on paying it.

They did so under the *bona fide* belief that they were thereby protecting their junior deed of trust, with the well-founded assurance afforded by her signature, independent of the acknowledgment that she assented to the same, and was willing that the same property should remain bound to them in place of Busby.

The cases are numerous which hold that where one pays out money to discharge an incumbrance upon an invalid security for the same lien, he will be subrogated to the old one. And the same doctrine has been applied to purchasers

under invalid deeds, who have afterwards satisfied prior incumbrances without taking an assignment.

Without discussing so obvious an equity, it may suffice, among them, to refer to *Levy v. Martin, 48 Wis., 198; Dillon v. John and Annie Byrne, 5 Cal., 455; Homeopathic Mu. Life Ins. Co. v. Marshall, 32 N. J. Eq., 103; Carr v. Caldwell, 10 Cal., 380.* See also frequent applications of this doctrine, supported by many citations, distinguishing the cases of those of mere strangers, or lenders of money, in Mr. SHELDON's recent work on *Subrogation, sections 8, 19, 20, 42, 240–1, 243–5–6–7.* The citations in the last sections are also upon the point, as expressed by Mr. SHELDON, that " one who pays a debt at the instance of the debtor, under such circumstances that it appears to have been contemplated by the parties that he should have become entitled to the benefit of the security for the debt held by the creditor from the debtor, may, as against the debtor, be subrogated to the benefit of such security; and of the debt that he has discharged."

Under the circumstances, and in view of these principles, and examples of their application, we must hold that Chaffe & Bro. were not mere volunteers or lenders of money, but that they paid the Busby mortgage with the *bona fide* intent of consolidating the prior incumbrance with their own, under what appeared to them, with reason, to be the wish and intention of Mrs. Oliver herself. Their own incumbrance, as against Mrs. Oliver, is void, and they can take nothing by that, but the Busby mortgage was valid, and to that extent they are entitled to subrogation.

There is nothing in the proof to show that the $3,000 were not due upon the Busby mortgage, nor is any point made of that in the briefs.

With regard to the rents, we suppose the court below acted upon the supposition that they had been sufficient to

discharge all advances for taxes, and, not recognizing any other lien, dismissed the bill. The personal property, as to which the deed of trust was valid against Oliver, seems to have passed out of notice. Perhaps none of it was left. Perhaps it passed to Chaffe & Bro., on their purchase, when the deed of trust was closed. They are properly chargeable with all rents actually received as partial payments on account, as well as the value of any personal property. They will not be properly chargeable with the full value of such rents as they might have obtained on a fair competition amongst tenants. This case differs from that of *Sutton v. Myrick*, decided at the present term. The deed of trust being void they had no title as landlords, and although they assumed that position, the relation was only nominal. They did not disturb Oliver nor his wife in their possession, nor alter the control and management which she had authorized her husband to exercise. In effect, things were left as they were. She can not complain that they did not interfere and turn her out of doors, to obtain higher rents from others than her husband paid.

The view taken by the Chancellor below, rendered an account unnecessary. Inasmuch, however, as we think it was erroneous in not applying the doctrine of subrogation, under the prayer for general relief, it will be necessary to a complete adjustment of all equities, that an account should be taken to ascertain the extent of the subrogation, and to form the basis of a personal decree against Oliver, as incident to the equitable elements necessarily involved in the controversy.

The whole debt was Oliver's, and it was his primary duty also to pay the taxes. But for so much of the indebtedness as arose from advances to pay taxes, the whole property is bound; and for so much as was advanced to pay the Busby mortgage, so much of it is bound as was

included in it. For the rest complainants have no security, but must be content with a personal decree against Oliver.

Shipments of cotton specifically drawn on for other purposes, can not be estimated as payments. Where that is not shown, or some other specific appropriation made at the time, all shipments of cotton, payments of money, or values of personal property actually taken, if any, must be appropriated in order of time, first to the actual amounts paid for redemption and taxes, and next to the amount paid on the Busby mortgage, with interest on all at the rate of six per cent., and after that to the remainder of the account due from Oliver. This order results from the fact that the taxes should be a first charge on the property for the benefit of all, and should be reimbursed before the complainants should be required to credit any of their claim, and because the mortgage seems older than the subsequent debt contracted by Oliver with Chaffe & Bro. Besides, it is just to Mrs. Oliver; as if there had been no subrogation, or transfer in law, the first shipments or payments would properly have gone to Busby in discharge of his claim, and Mrs. Oliver can not equitably be put in a *worse* position than she would have occupied if there had been none.

### DIRECTIONS FOR A DECREE.

For error in dismissing the bill by the court below, let the decree be reversed and the cause remanded, with directions to enter a decree declaring a lien in favor of complainants, upon all the lands embraced in the deed of trust to Bradford, the trustee, for the actual funds paid by them in redeeming said lands, and paying taxes thereon, with six per cent. per annum, interest, from time of payment. Also declaring a lien in their favor upon the lands embraced in the mortgage to Busby for the amounts actu-

ally paid by them to satisfy said mortgage, with like interest. Also that an account be taken of the indebtedness of Oliver to complainants under the deed of trust, and that all payments made by the former, whether in money, cotton or other property, not specifically drawn upon or appropriated at the time, be credited first in discharge of said lien for taxes, and redemption, with interest; next in discharge of the lien of the Busby mortgage with like interest, and then to the remaining debt of Oliver; and that a personal decree be rendered against him for any balance that may be found due, calculating interest at the rate of eight per cent. per annum, from maturity, on the amount of his nine months' note for $2,750, bearing even date with the deed of trust; and with further directions that if the payments so appropriated should fail to cover the liens declared, that the court decree and carry into execution a sale of the property of sufficient amount to discharge them to the extent declared and the costs of this suit, if the same be decreed against defendants; and that with regard to matters so referred, the Master be empowered to take proof; and for other and further proceedings as may consist with this opinion, and the principles and practice in equity.

And inasmuch as this decree here is based upon matters and equities properly embraced in the general prayer but not specifically pressed upon the attention of the court below, it is here directed that the costs of this court be equally divided between the parties, leaving the costs below to be adjusted by the Chancellor.

ENGLISH, C. J., dissenting. I respectfully dissent from the conclusion of my brother judges as to the matter of subrogation. The debt secured by the mortgage to Busby

was the debt of the husband, and the wife was mere surety.

The deed of trust was void as to Mrs. Oliver, for want of acknowledgment by her as required by the statute. It was void not only as a conveyance, but worthless for any other purpose as to her.

It can not be treated as evidence of a request by her to appellants to pay the Busby debt, and relieve her estate from the mortgage, because it was not read to her, and there was no proof that she knew its contents. Nor was the mortgage mentioned in it.

Appellants were volunteers in paying the Busby debt as to her. They stand simply in the attitude of having paid it for the husband, the principal, and are not entitled to subrogation as against the wife, the surety.

On the actual facts, as I view them, the case falls within the decision of this court, as to subrogation, in *Nichol v. Dunn et al., 25 Ark., 129.*