## GOLDSMITH V. STEWART, ET. AL.

1. SUBROGATION: *Of assignee of void security.*

The assignee of a void security, issued in lieu of a valid one, is in equity, subrogated to all the rights of his assignor (the holder) in the original security; and is entitled to have it delivered up to him, and if imperfect, to have it reformed by the party that executed it, or by his successor in office.

APPLICATION:

The plaintiff filed his complaint in equity against the clerk of the county and several separate boards of school directors, showing that the holders of school warrants of their several school districts, had presented them to the county court for cancellation and re-issue, in pursuance of an act of the legislature, and that new warrants were issued by the court and were transferred to him by the holders, and the originals were deposited with the clerk; and that the act under which the new issue was made had been declared unconstitutional and void by this court. Further, that the original warrants were imperfect in omitting to state the considerations for which they were issued. He prayed that they be delivered up to him by the clerk and be reformed by the directors of the districts for which they had been issued by their predecessors. HELD, upon demurrer: 1st. That the plaintiff, as assignee of the void re-issue was, in equity, subrogated to all the rights of the holders in the original certificates, and was entitled to them. 2d. The trustees who issued the originals should be parties, and should reform them, if within reach of the process of the court, but if not, then their successors, the defendants, might reform or re-issue them under the directions of the court. [For further directions as to the practice in these cases, see the opinion.—REP.]

APPEAL from *St. Francis* Circuit Court in chancery.
Hon. M. T. SANDERS, Circuit Judge.

*B. C. Brown* and *Sanders & Husbands* for Appellant.

A court of equity alone has jurisdiction of a matter of subrogation. *Pomeroy Eq., Vol. III, Sec. 1419 and Note 1; Story Eq., Vol. I, Secs. 635–6–7; 31 Ark., 421; Ib., 144.*

Against the clerk, Stewart, appellant had but one cause of action. This gave the court jurisdiction of the whole subject

matter, for having assumed jurisdiction for one purpose, it will retain it for all purposes.

That a chancellor should compel plaintiff to bring a multitude of suits, and divide up one cause of action against the clerk, on plea of misjoinder as against the different school trustees, is a singular and novel departure from the uniform spirit and procedure of a court of equity. In support of the joinder see *Story Eq. Pl., Secs. 193, 271, 284, 541, 535, 537; Newman Pl. & Pr., 116, 467; 11 Ark., 726; 36 Id., 192; 2 How. (U. S.), 619.*

Plaintiff's only remedy was in equity, he could only claim the orders by equitable subrogation. They were never in his possession. He could not bring replevin, nor could he sue the districts without first obtaining possession. *26 Ark., 151; 31 Ark., 141; Daniel on Neg. Inst., Vol. I, p. 13; 3 Lead. Cas. in Eq., p. 307; Chitty on Bills, 8 and 9.*

Where the parties are numerous or difficult to identify, and would be of great labor to bring before the court, a court of equity will relieve of the necessity of so doing upon proper allegations. *Story Eq. Pl., Secs. 97, 143; Newman Pl. & Pr., 117; 3 Ark., 364.*

The court had power to reform the orders, so as to show the real consideration. Should the trustees refuse or fail to do so, the chancellor could create a commission for that purpose. *33 Ark., 89; 45 Cal., 78; 46 Id., 646; Pomeroy on Contracts, Sec. 235, et seq; Story Eq., Vol. I, Secs. 79, 103, 152, 155, 166.*

The character of the action is not such a one as to which the statute of limitations can be pleaded by demurrer. There was no such decree sought as against which the plea could be interposed. There never was a present and complete cause of action on these orders, and the statute did not commence to run. Plaintiff was entitled to have the orders, and to have them reformed, whether barred or not; if barred he could tender them

in payment of taxes. *36 Ark., 487.* But five years had not elapsed from the issue of the orders to the time when they were filed for cancellation and re-issue. In this case the scrip was surrendered under a law of the state, passed by the legislature, and in obedience to an order of court. This was a mistake of law and fact, against which equity will relieve. *Pomeroy Eq., Secs. 838 to 850, Vol. II; Story Eq., Vol. II, Sec. 1521.*

The statute of limitations has no effect *proprio vigore* in a court of equity when the cause of action is exclusively an equitable one. *3 Gill. (Md.), 138; 11 Conn., 160; 1 Saxt. Chy. (N. J.), 685; 7 John. Chy., 90; Cooke, Tenn., 179.*

*James P. Clarke* for Appellees.

EAKIN, J. On the 24th of March, 1882, the appellant, Goldsmith, brought this suit in equity, against the clerk of St. Francis county and several separate boards of school directors in said county, for districts numbered 1, 3, 4, 5, 6, 8, 9, 10, 16, 18, 19, 28, alleging: That at sundry times the trustees, or directors, of the named districts, had issued certain orders or warrants upon the treasurer of the county, in favor of divers persons to whom the named districts were severally indebted for services, amounting in the aggregate for each district, as follows: For No. 1, $280; for No. 3, $298; for No. 4, $128; for No. 5, $300; for No. 6, $234; for No. 8, $113.75; for No. 9, $150; for No. 10, $215; for No. 16, $200; for No. 18, $50; for No. 19, $132.16; and for No. 28, $372.50, amounting in the general aggregate to $2,473.91.

That at the January term, 1877, of the county court, the holders of these warrants presented them to the court for cancellation and re-issue, under an act of the general assembly of the 30th of November, 1875, and an order of the court made in pursuance of its provisions; and that a new warrant or order

was issued in lieu of each of the old ones, which were surren-
dered and filed with the clerk, endorsed by the judge as
"canceled," and still remain in the clerk's possession.   The
new warrants are exhibited, having been issued in the name of
Adams & Dixon, the holders of the originals, and having been
by them sold, on the 23d of July, 1881, for a valuable consid-
eration, to complainant.

That after said act had been held unconstitutional by the
courts, the defendants all joined in a suit in equity, making a
common cause, and had complainant enjoined from the col-
lection of said re-issued warrants.

Wherefore, he claims that, in equity, he should be subro-
gated to the rights of the holders of the original warrants, and
to the possession of them, which the clerk upon demand has
refused to give up.   He says they may be identified.

Further, he says that the original orders, themselves, are de-
fective in this; that the various school directors, issuing them,
failed, as required by law, to state upon their face the consider-
ation or kind of service for which they were issued.   He cannot
undertake to state precisely the consideration or kind of service
for which each separate warrant was issued, but alleges that the
"principal part of them" was issued for teachers' wages, and
the rest for services rendered in and about the schools for the
various districts, and that the consideration of each separate
order or warrant can be easily ascertained through proof by
competent witnesses.

Although these warrants were issued by the predecessors of
defendants, the complainant submits that they should, never-
theless, correct the mistakes of their predecessors in omitting
to state the consideration of the several warrants.   He, there-
fore, prays that the warrants be reformed in each case, by the
insertion of the consideration.   Specific prayers are framed with
reference to the objects of the bill, including a prayer that if

necessary a master be appointed to examine into the matter and correct the warrants.

The directors of district No. 1 moved that their names be struck out, on the grounds that they were not necessary or proper parties, and were improperly joined as defendants; in response to which the complainant amended his bill so as to proceed against the clerk and the directors of district No. 1 alone. On motion of defendants the complainant also set forth the original warrants of district No. 1, to which he claimed to be subrogated.

A demurrer to the complaint was then filed and sustained by the court. Complainant rested and appealed.

The new warrants were void. Independently of the act of November 30, 1875, the county court had no power to order the clerk to draw orders upon the county treasurer in payment of services rendered the several school districts. This power of drawing such warrants was in the school directors in 1877, and had been formerly in the trustees for the districts. (See *Gantt's Dig., Sec. 5435; Mansf. Dig., Sec. 6221*). It was attempted to be conferred upon the court, upon directions to the clerk, by the third clause of Sec. 1 of act of November 30, 1875, in case of re-issues of warrants called in. But this section was unconstitutional and void. *McCracken v. Moody, 33 Ark., 81*.

This void re-issue left the original warrants in *statu quo*, and if valid originally they no doubt remained the property of the true owners at the time they were surrendered. They were simply placed in the custody of the clerk and were canceled by mistake. There can be as little doubt that an assignee of the supposed new security would, in equity, stand in the place of the original owner of the surrendered security, and be subrogated to his rights. Although an instrument may be void, it does not follow that an assignment of it is wholly inoperative in equity. If it is supposed by the parties to represent a claim

for money, and if assigned for value, it will raise an equity in the assignee, not to recover on the instrument itself, but to stand in the shoes of the assignor with regard to the original claim for which it was substituted. It is evidentiary of the equity. This has been held by the circuit court of the United States for this district in the case of warrants illegally issued for services, for too great an amount, on account of the depreciation of the scrip. Such warrants, although void, have been held to be, in the hands of third parties for value, equitable assignments of the true amount of the claims for which they were issued.

Subrogation is simply asking something in the right of another, or as it were, under another, which that other ought in justice and equity to accord the use of to the person asking. As when a surety pays a debt, the creditors ought to allow the surety to use any securities he may have against the debtor, although *stricti juris* there may be no privity between the surety and debtor as to such securities. It is a doctrine peculiar to courts of equity, and wherever it is necessary for purposes of justice they have jurisdiction, although it may be that, in some cases, courts of law, as their practice has been liberalized, may have come to grant relief also. It is plain enough that the nature of this case was such as to make a court of chancery the appropriate tribunal to be invoked for relief, if relief could be granted by any court at all. The real difficulty is in determining whether there can be any proper remedial process administered even under the enlarged powers of chancery. The complainant seeks reformation of the original warrants as essential to make his remedy complete. This also is a peculiar branch of chancery jurisdiction and there could be little difficulty if the omissions inadvertently made in the instruments had been in a private transaction, and the original parties were before the courts. Re-execution of the instruments might be directed, and re-delivery to the per-

sons having the right by subrogation. The difficulty which meets us is this: The old trustees, who issued the original warrants in 1873 and 1874, are not here, nor any longer in office. The defendant commissioners indeed stand in their places, representing the district and clothed with the same powers formerly appertaining to the trustees. They cannot themselves, however, issue new warrants for services rendered in 1873 and 1874, for these warrants, both as to substance and form, are statutory, and the statute confers no such power. The warrants, showing that and no more, would be void upon their face, and could not be used for payment of taxes or otherwise, especially as they would appear to have been issued after the claims for services were barred by the statute of limitations.

Courts of chancery may compel parties before them, to re-form or re-execute instruments in proper cases, but it is not in accordance with the usual practice in doing so, to use the names of persons not parties to the suit. These warrants, if practicable, should most naturally and properly be reformed or re-executed by the original trustees who issued them, and they should be brought before the court for the purpose, if within reach of its process. The court may then act upon them personally and direct them to substitute for the originals, other warrants of the same date, executed as the originals should have been. This presupposes, of course, that the complainant shall first satisfy the court that the services were rendered, and that the originals were executed by mistake—and for this reason, also, it is fitting that the original trustee or trustees, as to whose action the mistake is charged, should be before the court as the most proper persons to make and contest the issues as to whether there was a proper consideration, and whether the omission to insert that in the warrants was indeed by mistake and inadvertence.

*Proper parties.*

It may be, however, that the trustees for this and other districts are dead, or without the jurisdiction. If such be the case, the court ought not to allow a plain equity to fail from absence of merely formal parties, having no personal interest, where there are other parties, as these directors, who may well represent the interests of the fund sought to be affected. The present directors are proper parties in any case, whether the original trustees may be had or not. In case the latter cannot be brought in for the simple method of making the correction themselves, we see no objection to an order upon the present directors to execute other warrants, showing upon their face that they were executed by order of the court, as of the date of the originals, and to have the same force and effect in every respect, as if issued by the proper trustee of that date. This would prevent their revival if barred by statute. Such warrants could not be collected of the treasurer in money, and would at the same time be as useful as the originals in all other respects. They might safely be received by the collector for taxes, if the originals would have been. The remedial processes of equity are quite flexible, and where there is a manifest right clearly recognized, in equity jurisprudence they cast about for some fit mode of enforcing it, if no exact precedent may be found applicable to the case. This is done by its control of the parties, or the property, brought before it or within its grasp.

The demurrer was sustained for want of equity. We think that was erroneous, although there does appear to have been a defect of parties, in this, that the original trustees are not brought in, nor is there any cause assigned why they are not. The court might of its own motion, if it had believed this was the only defect, have directed the trustees to be made parties, or, at the most, should not have gone farther than to dismiss the bill without prejudice.

In view of the public interests, and the embarrassments The proper practice in these cases. which may have arisen out of the *bona fide* action of the courts and scrip-holders, in obeying an act which they supposed to be constitutional and obligatory, we deem it expedient to indicate the proper practice to be pursued in this and like cases where scrip has been canceled under this act. If practicable, the reformation or re-execution of the scrip should be done by the very trustees who executed the originals, unless, as in some cases may have happened, the originals be unmutilated or un-defaced in the hands of the clerk, and valid upon their face. In such cases the mere transfer of possession will be sufficient relief. We imagine, however, that, in most cases, the old scrip could not be used. The court should, in cases of scrip origi-nally defective, like this, ascertain either directly or through the aid of a master, whether or not there was a good consider-ation, the *onus* of showing that being on the claimant. Being satisfied on that point it should direct the re-execution of scrip by the same trustees of the same date with the original. If the trustees cannot be brought in, then the court may direct the present acting directors to execute scrip in lieu of the original, showing upon its face their authority and the nature of the new scrip, as above indicated.

The common bond for uniting several districts in one suit exists only where the original warrants remain in the hands of the clerk, undefaced by cancellation, and valid upon their face. If the same party claims warrants or orders of several districts, one act of delivery by the clerk will suffice, and he may be united in one suit with the directors of the several districts. The old trustees in such cases have no act to perform nor issues to make. But where reformation or re-execution is required, then the clerk has no duty to perform, and the suit should be against the districts severally, making the present directors, in all cases, parties, and the original trustees also, or assigning some reason why the latter cannot be reached.

Reverse the decree and remand the cause, with leave to the complainant to amend and bring in new parties, and for such other proceedings as may be proper under the practice in equity, in accordance with this opinion.