## WESTCOTT and husband vs. MILLER.

*(1)* DESCENT *of land. (2–4)* EJECTMENT: STATUTE OF LIMITATIONS: *(2) Coverture as a disability. (3, 4) Ejectment for wife's land, by whom to be brought; when not barred. (5) Practice on reversal.*

1. Under sec. 38, p. 184, Terr. Stats. of 1839, where a person of full age died unmarried, intestate and without issue, leaving surviving him his mother and also brothers and sisters, the mother did not take the whole estate, but only an equal share with the brothers and sisters, the statute having been adopted from Massachusetts with that construction.
2. Prior to ch. 29 of 1872, coverture, existing when title to land accrued, was a " disability," which prevented the running of the statute of limitations, notwithstanding the statute which gave the wife control of her separate estate as if she were unmarried, and permitted her to sue alone in respect thereto. *Wiesner v. Zaun,* 39 Wis., 188.
3. Whether or not the wife's seizin in law, or constructive possession, after descent cast upon her, of wild lands, not adversely possessed, would be sufficient to give the husband, upon her death, a tenancy by the curtesy, the fact that during twenty-five years, beginning after such descent cast, during which the land was held adversely, no action was brought to recover the possession from the adverse occupant, will

not bar ejectment by the husband and wife; especially as the statute still permits the husband to join with the wife in actions concerning her separate property. R. S., ch. 122, sec. 15.

4. The husband cannot bring ejectment in his own name alone for land to which the wife had title at the time of marriage, but must join the wife, alleging title to be in them both, in right of the wife. *Strœbe v. Fehl*, 22 Wis., 338.

5. In reversing a judgment where the trial was by the court alone, this court does not generally order a new trial; but in the present case, the evidence on some material points being obscure, a new trial is ordered.

APPEAL from the Circuit Court for *Jefferson* County.

Ejectment, commenced in 1873, and tried by the court alone. The facts were substantially as follows: In 1840, Alvin Willard, being then seized in fee simple of an undivided half of a certain half-quarter section of land in said county, died unmarried, intestate and without issue, leaving him surviving his mother, then Roxy Moore, a brother, and six sisters, one of whom is the plaintiff *Sophronia Westcott*. The plaintiffs were married in 1833, and have since been husband and wife. In 1842 or 1843, Almira Willard, one of the sisters, died, unmarried, intestate and without issue. In 1852, Roxy Moore died. Before her death, viz., in 1844, supposing herself to be the sole heir of Alvin Willard, deceased, she had executed and delivered a deed purporting to convey an undivided one-half of said premises to Erastus Willard. By various mesne conveyances, Erastus Willard's title to the land passed to the defendant in 1853. It appears that in 1848, actual entry was made upon the land under claim of exclusive title founded upon one of the deeds in defendant's chain of title from Erastus Willard; and that the land was continuously occupied under that claim until the commencement of this action, and was cultivated and improved by the successive occupants.

The circuit court held that, upon the death of Alvin Willard, his land descended in equal shares to his mother, brother and sisters; that, upon the death of Almira Willard and Roxy Moore, respectively, their interests in the premises descended

in equal shares to the surviving brother and sisters of said Almira; that the plaintiff *Sophronia* thus became seized in fee of an undivided one-sixth of the undivided half of which Alvin Willard died seized; but that the possession of said premises by defendant and those through whom he claimed title, was adverse, and the title of said *Sophronia* was barred by the statute, and plaintiffs could not recover. From a judgment for the defendant in accordance with this finding, the plaintiffs appealed.

For the appellants, there was a brief by *Fish, Lee & Wegg*, and oral argument by *Mr. Wegg.* They contended, 1. That under sec. 39, p. 185, Terr. Stats. of 1839, upon the death of Alvin Willard, unmarried, intestate, without issue, and over twenty-one years of age, the land of which he died seized, descended in equal shares to his mother, brother and sisters. *Mayo v. Boyd*, 3 Mass., 13, *Sheffield v. Lovering*, 12 id., 490; *Perkins v. Simonds*, 28 Wis., 90; *Wiesner v. Zaun*, 39 id., 188. Upon the death of Almira Willard, over twenty-one, unmarried, intestate and without issue, her interest also descended in equal shares to her mother, brother and sisters, each of whom was thereafter seized in fee of an undivided one-seventh of Alvin Willard's estate. The claim of one-sixth in the complaint was an inadvertence; but, though the variance would have been fatal at common law, we may now recover the interest to which we show ourselves entitled. Laws of 1870, ch. 117, sec. 1; Tay. Stats., 1676, § 44. 2. That, the plaintiff *Sophronia* having been under the disability of coverture when the adverse possession began and ever since, her rights were not barred. Counsel discussed at length the various statutes affecting the question prior to 1872, and argued that ch. 29 of the latter year could not cut off the plaintiff's right of action instantaneously. *Osborn v. Jaines*, 17 Wis., 573, 576. 3. That the wife could maintain this action without waiting for the death of the husband. (1) Sec. 1, ch. 44, Laws of 1850 (sec. 1, ch. 95, R. S. 1858), provides that " the real estate, and the rents, issues and profits thereof, of any female now married shall not be subject to the

disposal of her husband, but shall be her sole and separate property as if she were a single female." When this act passed, adverse possession had lasted but little over one year. The husband's interest was by the act transferred to the wife, and became merged in the fee; and the latter was the only estate upon which the adverse possession could thereafter act. If it be said that as to the estate already vested in the husband the act was void, the answer is, that the point can be litigated only by the husband or some one claiming under a conveyance by him of his life estate, and not by this defendant, who is a stranger. *Sinclair v. Jackson*, 8 Cow., 579; *Sydnor v. Palmer*, 29 Wis., 226. (2) If the husband's life estate continued notwithstanding the act, it was his duty as tenant to preserve the estate intact for the reversioner, and any act inconsistent with that duty forfeited the life estate to the reversioner. At the common law, a feoffment with livery, or a conveyance by matter of record, as by fine or common recovery, or suffering or committing waste, granting a greater estate than the tenant had, or allowing a *disseizin* for a sufficient time to bar the rights of the particular tenant, worked a forfeiture of the life estate, and the reversioner or remainderman had an immediate right of entry. Under sec. 4, ch. 59, R. S. 1849 (sec. 4, ch. 86, R. S. 1858), an *attempted conveyance* by a tenant of a greater estate than he has, does not work a forfeiture; but this does not affect the question of a forfeiture for *disseizin*. Sec. 32, ch. 56, R. S. 1849 (sec. 32, ch. 83, R. S. 1858), provides that " no expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate, *nor by any destruction of such precedent estate by a disseizin, forfeiture,* surrender, merger or otherwise." This is a recognition of the principle that the particular estate may be lost or forfeited by *disseizin*. A right of entry would then immediately accrue to the reversioner or remainderman, and the statute of limitations immediately begin to run against such right, and he might thus be barred of his right of action be-

fore the death of the tenant for life.   This statute provides that if, after forfeiture, the remainderman fails to enter within the time limited by statute, it shall do his estate no injury, but he may enter after the death of the life tenant, upon the new right which then accrues. This is merely a reënactment of the common law as settled by numerous decisions.   *Wells v. Prince,* 9 Mass., 508; *Wallingford v. Hearl,* 15 id., 471; *Tilson v. Thompson,* 10 Pick., 362; *Stevens v. Winship,* 1 id., 317, 327; *Miller v. Ewing,* 6 Cush., 34; *Morton v. Funk,* 6 Pa. St., 485; *Kemp v. Westbrook,* 1 Ves. Sr., 278.   The husband's interest in this case was not barred under the statutes of 1849, until 1868; and as the ten years statute was not passed until 1857, he would not be barred under that until 1867. The forfeiture, therefore, did not occur, nor the wife have the right of entry, until 1867; and she could bring this action within ten years from that date, without invoking the exception in favor of married women in the statute of limitations. 4. That as the wife or her heirs may at least maintain the action after the death of the husband (9 Mass., 508; 15 id., 471; 10 Pick., 359; 6 Met., 373; 6 Cush., 34; 4 Johns., 390; 8 id., 262; 5 Cow., 74; 3 Gill & J., 183; 1 Head, 276; 37 Miss.,165; 2 Greenl., 400; 12 Pa. St., 122), and as a judgment in ejectment settles the title as it existed at the commencement of the action (*McLane v. Bovee,* 35 Wis., 27), the judgment appealed from, which declares that all *Mrs. Westcott's* rights in the land have been transferred to the defendant, is erroneous.

The cause was submitted for the respondent on the brief of *L. B. Caswell* and *W. H. Rogers.*   They argued:   1. That under sec. 38, p. 184, Terr. Stats. of 1839, the lands of Alvin Willard, on his decease without issue, descended to the next of kin, that is, his mother; that the exception created by sec. 39 relates only to the estate of a deceased father of such intestate; that this is so held in cases where the intestate is a minor, in *Perkins v. Simonds,* 28 Wis., 90, and *Nash v. Cutler,* 16 Pick., 491, and there is no reason for putting a different construction

upon the section in the case of an intestate over twenty-one years of age; and that what is said on that subject in *Mayo v. Boyd*, 3 Mass., 13, and *Sheffield v. Lovering*, 12 id., 490, is merely *obiter*. 2. That the proof in this case does not determine whether Alvin or Almira Willard was over or under twenty-one at death, and it was incumbent on plaintiff to show her title affirmatively. 3. That when the descent was cast on *Mrs. Westcott*, in 1843, her husband acquired a freehold estate in the land, with the right to the possession and enjoyment thereof so long as they should both live; and the wife is not damnified by being kept out of possession, nor will she have any cause of action against the defendant until after the death of her husband. 2 Kent's Com., 130; *Strœbe v. Fehl*, 22 Wis., 337; *Bishop v. Blair*, 36 Ala., 80; *Robison v. Robison*, 44 id., 227; *Coleman v. Satterfield*, 2 Head, 259; *Gregg v. Tesson*, 1 Black, 150; *Sharp v. Head*, 11 B. Mon., 277. 4. That the husband was barred of his estate by the statute of limitations. *Gregg v. Tesson, Sharp v. Head* and *Coleman v. Satterfield, supra*. His vested right could not be taken away by the statute of 1850. *Westervelt v. Gregg*, 2 Kern., 202; *Benedict v. Seymour*, 11 How. Pr., 176; *White v. White*, 5 Barb., 474; 17 id., 660; 18 id., 159, 561; *Prall v. Smith*, 2 Vroom, 244. See also *Strœbe v. Fehl, supra*, and *Clark v. Clark*, 20 Ohio St., 128. Defendant, claiming by virtue of an adverse possession, can raise this question. *Kibbie v. Williams*, 58 Ill., 30; 31 id., 219, and cases above cited.

At the January term, 1875, the judgment was reversed; but on respondent's motion a reärgument was ordered.

The cause was reärgued at the August term, 1876, by *Mr. Caswell* for the respondent, and *Mr. Fish* for the appellants. To the point that the wife could not assert her title until the death of her husband, respondent's counsel cited the following additional cases: *Thompson's Lessee v. Green*, 4 Ohio St., 216; *Ford's Lessee v. Langel*, id., 464; *Neal v. Robertson*, 2 Dana, 86; *Downing's Heirs v. Ford*, 9 id., 391; *Guion v.*

*Anderson*, 8 Humph., 325; *McDowel v. Potter*, 8 Pa. St., 189; *Jackson v. Schoonmaker*, 4 Johns., 391; *Jackson v. Sellick*, 8 id., 262; *Jackson v. Johnson*, 5 Cow., 74; *Foster v. Marshall*, 2 Foster, 491.

For the appellants it was contended, that the seizin of the wife which will entitle a husband to curtesy, must be such that the estate might pass by descent to the issue of the marriage (Terr. Stats. 1839, p. 184, § 37; Co. Litt., 40 a, 29 a; 8 Rep., 34, 36; 2 Black. Com., 126–128; 4 Kent's Com., 27–35; 1 Washb. R. P., 127–142; 1 Cruise's Dig., 146, sec. 6, and 148, sec. 15); that at common law, and by the statutes of 1839, seizin in fact was necessary to constitute a person an ancestor (2 Black. Com., 209–227; 4 Kent's Com., 485–490; 1 Broom & Hadley's Com., 568, 570, 658–660; Co. Litt., 116; Terr. Stats. 1839, p. 184, § 38); that the husband did not acquire by the marriage the sole seizin in the wife's lands, but both together had the whole estate, and both were considered as seized in fee, and must so state their title in pleading (1 Washb. R. P., 312, 313, and cases there cited); that until the husband and wife became seized in fact of the lands in question, therefore, the husband had no estate therein upon which the statute of limitations could operate; that the husband alone could not at common law, by action, recover possession of land the title of which came to his wife by descent or devise, but she must be joined as coplaintiff (1 Chitty's Pl., 74, 84; Jacob's Law Dic., "Baron & Feme;" 1 Washb. R. P., 312, 313; *Odil v. Tyrrel*, 1 Bulstrode, 21); and that the exception recognized in some cases, where seizin in law may be sufficient to make the husband tenant by the curtesy, cannot be invoked by the defendant, because it affirmatively appears that the mother, within a year of the death of Alvin Willard, conveyed the lands, and the deed was recorded, and taxes paid by those claiming under it, and notorious adverse possession taken in 1848.

Westcott and husband vs. Miller.

Cole, J. The title to the land in controversy is derived from Alvin Willard, who died in 1840, unmarried, intestate and without issue, leaving, him surviving, his mother, one brother and six sisters. The circuit court does not specifically find that he was twenty-one years old when he died; but from the evidence we have no doubt such was the fact. It appears that, a month or so before his death, he executed to his brother Erastus a warranty deed of an undivided half of the lands which he had previously entered, and of which he held a patent from the United States; and the plaintiff *Mrs. Westcott*, who was about thirty when her brother died, says that she had known him from her childhood. These circumstances afford a very strong presumption that Alvin was more than twenty-one when he died; and the case will be determined upon that assumption.

The first question to be considered is as to the rule of descent of the real estate; and this is manifestly controlled and governed by the territorial statutes of 1839. On the part of the defendant it is claimed, that under sec. 38, p. 184 of these statutes, the mother, as next of kin, took the whole estate of which Alvin died seized, and that consequently the title to the land is vested in him. On the contrary, the plaintiffs insist that the land descended to the mother, brother and sisters equally. This question can hardly be considered an open one in this state, for this reason: The statute of 1839 was adopted substantially from the statutes of Massachusetts, and had received a judicial interpretation in that state before its enactment here. It must therefore be presumed that the territorial legislature, in enacting it, intended to take it with the construction which had been placed upon it by the courts of that state. This familiar rule in the construction of statutes is one which has been frequently recognized and acted upon by this court. *Draper v. Emerson*, 22 Wis., 148, *Perkins v. Simonds*, 28 id., 90, and *Wiesner v. Zaun*, 39 id., 188, are a few of the many cases which might be cited in confirmation

of the correctness of this remark. The two latter cases are very apposite, as they involved a construction of the statute of descent; and the cases of *Mayo v. Boyd*, 3 Mass., 13, *Sheffield v. Lovering*, 12 id., 490, and *Nash v. Cutler*, 16 Pick., 491, were cited and followed. It is true that in *Perkins v. Simonds* and *Wiesner v. Zaun*, we were considering the rule of descent of ancestral estate under the 39th section, and not the case where the intestate acquired lands by purchase. But still an examination of the cases in the 3d and 12th Massachusetts will show that the courts did not confine the application of this section to ancestral estate, but say that it referred to all other estate of the deceased child which did not come within the provisions of the first clause, and that the purpose of the whole section is to regulate the descent of intestate estate. The counsel for the defendant say that the precise question in those cases was as to the rule of descent where the property of the deceased child was derived from the parent by inheritance, and that whatever is said as to what rule would obtain when the child acquired the land by purchase, is *obiter*. This criticism may be just, but nevertheless these remarks very clearly show the view taken by the courts of Massachusetts of the meaning and intent of the statute; and, as already observed, the presumption is that the legislature enacted it here with this construction. And we are therefore constrained to hold that, though section 38 provides that Alvin's estate should descend to the next of kin in equal degree, yet the effect of this section is controlled by the other section, and the mother only took equally with the brother and sisters. This result is one which it would be difficult for me to reach were the question new or unembarrassed by the Massachusetts cases. C. J. PARSONS admits, in *Mayo v. Boyd*, that this interpretation is not consistent with the strict letter of the statute; but he observes that the deviation is not greater than is frequently necessary in order to collect the true intent of the legislators. And Mr. Justice JACKSON, by his historical view of the legis-

lation upon the subject, gives, in *Sheffield v. Lovering*, the rationale of this construction, and explains how it happened to be adopted in the first instance. But one approaching the statute as it now stands, without reference to this construction, would probably quite confidently say that the mother would take the whole estate as next of kin, and did not come within the clause of the 39th section, which provides apparently for another case where she should inherit equally with the brother and sisters.

This brings us to the questions arising upon the statute of limitations.

It appears the plaintiffs were married in 1833, and have ever since been and now are husband and wife. It further appears that one sister, Almira, died in 1842 or 1843, unmarried and intestate; but whether she was over or under twenty-one at the time of her death, it is impossible to determine from the evidence. In 1844, the mother, supposing she took the whole estate as next of kin of Alvin, conveyed the same to Erastus Willard; and he subsequently conveyed the land in question to a party under whom the defendant claims title. Actual possession of the land was taken in February, 1848, under these conveyances, and this action was commenced in July, 1873. The circuit court held that the possession since 1848 was adverse to the plaintiffs, and that the action was barred; in other words, that, notwithstanding the coverture of *Mrs. Westcott*, the statute ran against her, and also against whatever estate or interest her husband had in the land, growing out of the marital relation. And the first question, therefore, to be considered is, Was *Mrs. Westcott*, in consequence of being a married woman since the death of Alvin and Almira, under disability, so as not to be affected by the operation of the statute of limitations in favor of the defendant? In the case of *Wiesner v. Zaun*, above referred to, this question is very fully considered. It was contended in that case that Mrs. Wiesner, the plaintiff, was under no

disability when her title accrued, by reason of being a married woman, and that the bar of the statute applied. It was said that all the disabilities of coverture had been removed as to her separate estate, by the statutes which conferred upon her the rights of a *feme sole* in respect to it, and also gave her the right to maintain actions in her own name to recover such property or for any injury done to it. And, as all legal incapacity, so far as her separate estate was concerned, which by the rules of the common law she was subject to by reason of the marriage relation, had been completely removed, it was claimed that no disability existed in her case. This point was, however, deliberately overruled, after much consideration, and it was held that coverture still constituted a disability under section 13, ch. 138, R. S., and that the statute did not run against a married woman. The reasons for this decision are clearly and elaborately stated by Mr. Justice LYON in the opinion, and they need not, therefore, be repeated here. It is true, sec. 13, ch. 138, was amended, and married women are no longer exempted from the running of the statute of limitations in respect to actions for the recovery of real property. Ch. 29, Laws of 1872. This act attempted to bar absolutely and instantaneously an existing cause of action, which, upon the most obvious principles, it has been held the legislature can not do. *Smith v. Packard*, 12 Wis., 371, and *Osborn v. Jaines*, 17 id., 574.

The point whether the husband, who unites in this action, was barred of whatever rights or interest he had in the lands arising from the marital relation, was much discussed upon the argument. The land descended to the wife in 1840, on the death of Alvin; and whatever interest she took as one of the heirs of Almira, on her death in 1842 or 1843. But there has been no entry upon the land, nor any attempt to acquire possession on her part until the commencement of this action. And it will be noticed that the court found that the property had been in the actual adverse possession of the defendant and

his immediate grantor since 1848. Under these circumstances, the interesting inquiry arises, What estate had the husband in the property, to which the bar of the statute would apply so as to defeat this joint action?

At common law, by marriage the husband acquired the usufruct of all the lands and freehold estate of the wife during coverture; and this estate of the husband might by possibility last during his life. This was called an estate by the curtesy, and is commonly defined to be the interest to which the husband is entitled upon the death of the wife, in the lands or tenements of which she was seized in possession, in fee simple or in tail, during their coverture, provided they had lawful issue born alive which might by possibility inherit the same estate as heir to the wife. 1 Cruise's Dig., 140; 4 Kent, 29. Four things were requisite to the existence of this estate, namely: marriage, actual seizin of the wife, issue, and death of the wife. 4 Kent, 28; 1 Washb. on Real Prop., 127 et seq. Under our statute, the birth of issue is not essential to the existence of the estate (sec. 30, ch. 89, R. S.), though, if the wife at her death leave issue by any former husband, to whom the estate might descend, such issue takes the same discharged from the right of the surviving husband to hold the same as tenant by the curtesy. There has been much discussion in regard to what seizin of the wife was necessary in order to give the husband an estate by the curtesy. By the strict rules of the common law, there must not only be a legal seizin in the wife, but seizin in fact, or actual entry taken — *pedis possessio*, — or the estate would not vest; " though the former strictness, in this respect," says Prof. Washburn, " has been relaxed in England, and still more so in several of the United States." 1 Washb. Real Prop., 135. " Still," observes the same author, " it is the general rule of law in both countries, that, if the estate be such that there may be an entry made upon it, there must be such an entry during coverture, in order to give the husband curtesy. If, therefore, a woman be disseized and

then marry, the husband must regain the seizin by making an entry during coverture." Id. In some cases, especially of wild and incumbered land, it has been held that actual seizin in the wife was not essential, but that legal seizin or ownership, with the right of entry on the part of the wife, or constructive possession, was a sufficient seizin to give the husband curtesy. *Jackson v. Sellick*, 8 Johns., 262; *Davis v. Mason*, 1 Peters, 506. See also *Ellsworth v. Cook*, 8 Paige, 643. In *Lessee of Borland v. Marshall*, 2 Ohio St., 308, Mr. Justice THURMAN, in a very pointed and vigorous opinion, assails the rule of the common law upon this subject, and thinks there is no longer any ground or reason for recognizing or enforcing it in that state. And the law in that state is, that a husband may have tenancy by the curtesy, though the wife be never seized in deed, either actually or constructively, and though the lands be held adversely by another person during coverture. *Lessee of Mitchell v. Ryan*, 3 Ohio St., 378. But it is admitted that this is an innovation upon the common law, which made actual seizin during coverture indispensable to curtesy. *Neeley v. Butler*, 10 B. Mon., 48; *Welch's Heirs v. Chandler*, 13 id., 420; *Stinebaugh v. Wisdom*, id., 467; *Day v. Cochran*, 24 Miss., 262.

In the light of these decisions, it is difficult to understand what estate the husband had in the land, upon which the statute would run so as to prevent a recovery herein. The wife took the property as heir-at-law, and never had actual possession, nor even constructive possession, for more than twenty-five years prior to the commencement of this action. Indeed, the property has been in the actual adverse possession of another during that period. If, by reason of the marital relation, the husband would be entitled to the usufruct of the land, is it not obvious that entry and possession by himself or wife are essential as the foundation of this right? He may be entitled to rents and profits when possession is obtained, but we cannot well see that he has any vested interest in the land be-

fore such possession is secured. The husband's interest in the wife's land is not the land itself. Even where issue was born which might inherit, he had but a life estate, and that only, in strictness, where he reduced it into possession during the coverture. *Stoolfoos v. Jenkins*, 8 S. & R., 167. In analogy to this rule, we are forced to the conclusion that the husband had not such an estate or interest in the land as could or would be a bar to this action. When actual possession is acquired, then his marital rights will attach, whatever they may be. It follows from this view, that the position that *Mrs. Westcott* could not maintain the action until after the death of her husband, is untenable.

It may be conceded that *Mrs. Westcott*, upon whom the title was cast on the death of her brother and sister intestate, had such a seizin in these wild and uncultivated lands as would constitute her husband tenant by the curtesy on her death. But, as remarked above, that seizin was constructive merely; a seizin in law, not a seizin in fact, no actual entry having ever been made; and there was a disseizin in 1848, since which time the lands have been held adversely. On the rehearing of the cause, the learned counsel for the defendant claimed, and took the position more distinctly than in his first argument, that this action could not be maintained because the husband's rights were conclusively barred, and that *Mrs. Westcott* must wait until his death, when she might bring a suit to recover her property. By the judgment from which this appeal is taken, however, it is expressly adjudged that *Mrs. Westcott* was barred of all right and estate in the land when this action was commenced. This adjudication would obviously be an absolute bar to an action brought by her after the death of the husband, and is therefore erroneous upon the theory now advanced as to her rights and remedies. But the counsel further contends that the husband might have brought an action in his own name, without joining his wife, to recover his freehold interest, or life estate, at any time after

1848, and, as he did not until the statute had run against him, this joint action is barred. It is undeniable that there are decisions which sustain this position. But it seems to us the doctrine which these cases lay down is not sound, or not consistent with the principles of the common law. The fundamental error in them consists in assuming that the husband has a separate estate, distinct from the rights of his wife, upon which he can recover in an action of ejectment. In *Strœbe v. Fehl*, 22 Wis., 338, DIXON, C. J., in speaking of the interest of the husband in the real estate of his wife, uses the technical language of the common-law pleaders in these remarks: "At common law the husband acquires by the marriage a freehold estate in the lands of the wife, but not the fee, which still remains in the wife. Both together have the whole estate, and therefore in law they are considered as seized in fee, and must so state their title in pleading. The husband cannot aver in pleading that he alone is seized in fee in right of his wife, because the fee is in the wife, and of this he is seized jointly with her." p. 342. The chief justice refers to *Melvin v. Proprietors of Locks and Canals, etc.*, 16 Pick., 161, as an authority in support of these remarks. WILDE, J., in that case, considers upon authority this question of pleading, and says the established form in all real actions brought by husband and wife is to state or allege the title as being in both *jure uxoris*. "In real actions for the recovery of the land of the wife, and in a writ of waste thereto, the husband and wife must join." 1 Chitty's Plead., 11th Am. ed., p. 84. The correct way of pleading the title is to allege seizin in fee in the husband and wife, in the right of the wife. *Took v. Glascock*, 1 Saund., 250 *e*, and note (4), p. 253, in Mr. Sergeant Williams' edition; *Polyblank v. Hawkins*, 1 Doug., 329. Now this is an action for the recovery of the lands of the wife, and concerns her separate estate. The husband is joined in conformity to established precedents, and as he may be under the statute. Sec. 15, ch. 122, R. S

Westcott and husband vs. Miller.

Confessedly, on the death of the husband, *Mrs. Westcott* might maintain the action; and, if the husband should die pending this suit, the action would survive to the wife. The counsel does not seriously question the correctness of these positions. But he insists that this action is barred by adverse possession, though the wife, the real substantial owner, was under disability all the time, and was within the saving clause of the statute. It seems to us it would be illogical to so hold, especially in view of the rule recognized in *Strœbe v. Fehl, supra,* which we think is correct, and to which we adhere.

The point we have just been considering is very learnedly and fully discussed in *Watson v. Watson,* 10 Conn., 77, and *Lessee of Thompson's Heirs v. Green,* 4 Ohio St., 216, where the reasons on both sides of the question are presented in an able and forcible manner. We could add nothing valuable to the discussion, were we to continue it; we therefore take leave of the cause by saying that we remain of the opinion first announced, that this joint action is not barred.

This case was tried by the court without a jury. Ordinarily in such cases we do not order a new trial; but, on account of the obscurity of the evidence upon some material points, we think the rights of the parties will be promoted by another trial.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.