CHARMLEY, Respondent, vs. CHARMLEY, Appellant.

*May 3—June 23, 1905.*

*Appeal from county court: Perfecting of appeal: Amendments: Irregularities: Waiver: Changing nature of cause of action: Estates of decedents: Claims: Action, at law or in equity? Subrogation: Limitation of actions: Husband and wife.*

1. On appeal from the county to the circuit court, submitting to a trial on the merits waives all defects in the appeal not prior thereto brought to the attention of the circuit court and duly insisted upon.

2. Under sec. 4031, Stats. 1898 (providing that any person aggrieved by a decision of the county court "may appeal therefrom to the circuit court . . . by filing a notice thereof with said county court within sixty days from the date of the act appealed from, . . . together with such undertaking as is required" in sec.

4032), a substantial compliance with the words of the statute is sufficient.

3. The prime essential in taking an appeal from the county to the circuit court is the filing of a notice of appeal within the time limited therefor, and, that being done, the filing of the bond afterwards operates to perfect the appeal.

4. It is not permissible to entirely change the nature of a cause of action by amendment,—substituting one in equity for one at law, or one on contract for one sounding in tort, or the contrary.

5. A claim filed in the county court by a widow against her deceased husband's estate for a sum of money alleged to have been loaned him is in the nature of an action upon contract, and, by an appeal to the circuit court, it there becomes an action pending for legal relief—an action to recover upon contract.

6. In such case it appeared from the testimony taken in the circuit court, among other things, that claimant had paid a mortgage on the homestead of herself and husband, placed thereon by another before the title came to the husband, which the husband had assumed and agreed to pay. There was no evidence that the property conserved was possessed by the husband at the time of his death, either in the form it was in at the time of the payment of the mortgage or in any other. The trial court made findings in accordance with such testimony, and, after allowing her claim as filed in the county court to be amended to correspond with such findings, concluded that, by right of subrogation, plaintiff's claim was a legitimate charge against her deceased husband's estate, and ordered judgment accordingly. *Held:*

(1) If such evidence established a cause of action in claimant's favor, it was purely equitable to recover in the right of the mortgagee to whom the money was paid.

(2) Such equitable assignment went no further than the mortgagor's interest in the property, the debt itself being merely kept alive so far as necessary to support the lien, not so as to constitute in the hands of the plaintiff any legal claim whatever.

7. Subrogation exists entirely independent of contract relations. It is wholly a creature of equity,—a mere means by which the substantial ends of justice may be accomplished.

8. If a person pays off a lien claim on property for which he is not, but another is, liable, so that such other would derive the benefit thereof if his interest in the property were entirely relieved from such lien, and such person acts in the matter, not as a mere volunteer, but to protect his own interest in the property, such interest being legal or equitable, and either present or con-

tingent, equity immediately operates in favor of such person·
by preserving such lien claim to him with the same right to
enforce it as the original possessed, to the extent that such
person would otherwise suffer loss to such other's gain.

9. If a person paying off such lien is secondarily liable for the debt,
there springs out of the transaction an implied promise by the:
one primarily liable to repay the money. This does not rest
on the law of subrogation, but is enforcible as a legal liability.

10. A married woman, by reason of her interest in a homestead the·
title to which is in her husband and which is incumbered by
a mortgage to secure his debt, who, without request by him,
but solely to protect her homestead rights, pays off the incum-
brance, thereby becomes subrogated to the rights of the mort-
gagee.

11. While the statute of limitations does not run on causes of action
growing out of transactions between husband and wife, this is·
not extended to a cause of action not so arising and upon which
the statute of limitations commenced to operate before the hus-
band and wife became adversaries in respect thereto. *Second
Nat. Bank v. Merrill*, 81 Wis. 151; *Fawcett v. Fawcett*, 85 Wis.
332, and *Brader v. Brader*, 110 Wis. 423, followed, but limited and
explained.

12. In 1870 a married woman made payment of a mortgage on the
homestead occupied by herself and husband, because of threat-
ened foreclosure. The husband died in 1902, and the widow
filed a claim for the money so paid against his estate. *Held*,
that the claim was barred, since the limit of the right of the
mortgagee to enforce his demand was the limit of the claimant's
right, and, the statute of limitations having commenced to run
against the mortgage before she became the equitable owner of
the lien, such devolution did not interrupt its running in her
favor.

13. Where once the statute of limitations has commenced to run on
a cause of action, no circumstance not expressly provided by
statute will interrupt it.

APPEAL from a judgment of the circuit court for Dodge·
county: JAMES J. DICK, Circuit Judge. *Reversed.*

Plaintiff filed in the county court for Dodge county in pro-
ceedings for the settlement of her deceased husband's estate·
a claim for $1,000 alleged to have been loaned to him Novem--
ber 23, 1870, and six years' legal interest thereon. Objec-
tions were duly filed thereto and such proceedings were had:

in respect to the matter that an order was entered disallowing
the claim.    Proceedings were had to appeal therefrom to the
circuit court, which recognized the same as effectual.    A trial
was had in such court resulting in these findings, in effect:
Plaintiff and Joseph Charmley were husband and wife from
1865 to 1902, when he died.    She seasonably filed a claim
for $1,360 against his estate in the probate proceedings to set-
tle the same.    The claim was for $1,000, with six per cent.
interest thereon for six years.    November 22, 1870, she paid
a mortgage on the homestead of herself and husband, placed
thereon by another before the title came to him, which April
24, 1869, he assumed and agreed to pay.    She made such
payment to prevent a foreclosure of the mortgage.    She did
not voluntarily make the payment nor intend to relinquish
her right to repayment of the money from her husband or his
heirs.    No part of the money has ever been repaid to her.
She is entitled to have her claim as filed in the county court
amended to correspond with these findings.

As a matter of law from the foregoing the court concluded
that by right of subrogation plaintiff's claim was a legitimate
charge against her deceased husband's estate; that it was
valid in the beginning and was not affected by the statute of
limitations.    Judgment was rendered reversing the order of
the county court and remitting the matter thereto for further
proceedings.    Judgment was entered accordingly, from which
this appeal was taken.

For the appellant there was a brief by *Markham & Mark-
ham,* and oral argument by *C. A. Markham.*

For the respondent the cause was submitted on the brief of
*Malone & Miller.*

MARSHALL, J.    Several supposed defects in the appeal
from the county court are pointed out in the brief of counsel,
but it does not appear by the record that any objection to the
jurisdiction of the circuit court was made, except upon the

ground that the appeal bond was not filed in the county court until three days after the notice of appeal was filed. By submitting, as was done, to a trial on the merits all objections to defects in the appeal, not prior thereto brought to the attention of the circuit court and duly insisted upon, were waived. *Kasson v. Estate of Brocker,* 47 Wis. 79, 1 N. W. 418.

Sec. 4032, Stats. 1898, upon which counsel for appellant rely in support of the objection as regards the filing of the bond, is remedial and must be liberally construed so as to give the largest measure of protection to the right of appeal which it will reasonably permit. Such right is given by sec. 4031, which provides that any person aggrieved by a decision of the county court "may appeal therefrom to the circuit court . . . by filing a notice thereof with said county court within sixty days from the date of the act appealed from, . . . together with such undertaking as is required in" sec. 4032. A literal compliance with the words of the statute is not necessary. Substantial compliance is sufficient. *Perkins v. Shadbolt,* 44 Wis. 574. The prime essential in taking an appeal is the filing of a notice of appeal within the time limited therefor. That being done, the filing of the bond afterwards will operate to perfect the appeal. In *Perkins v. Shadbolt, supra,* it was held that a bond may be perfected even after the sixty-day period. The language of the statute as it then existed, and is now found in sec. 4032, was given substantially the same effect, as regards the language of the statute now found in sec. 4031, as has been given to somewhat similar statutes as regards appeals to this court. *Harrigan v. Gilchrist,* 121 Wis. 127, 212, 99 N. W. 909. Sec. 4032 provides that the party appealing shall, "at the time of filing notice of appeal and before his appeal shall be effectual for any purpose, file with the county court an undertaking," etc., plainly indicating that, while for any purpose of the appeal, as regards official action in sending the papers to the appellate

court, it is ineffectual till the filing of the undertaking occurs, there is an appeal instituted by filing the notice of appeal within the proper time, which may be perfected, at least within such time. This court construed the statute with great liberality in holding in *Perkins v. Shadbolt, supra,* that an appeal may be perfected after the expiration of the sixty-day period in case of the filing at first of an insufficient bond, but such holding very clearly precludes now reading the statutes so as to render failure to file the undertaking with the notice of appeal fatal to the proceedings, regardless of whether it is filed within the time limited for taking the appeal.

The claim was in the nature of an action upon contract. There is no suggestion in the statement of facts made in support thereof of a demand based upon equitable right of subrogation. Upon the cause assuming the character of an action pending in the circuit court, as it did on the appeal thereto being perfected and the record being properly filed in such court, it was an action pending there for legal relief,—an action to recover upon contract. There was no evidence to support such a cause of action, but there was evidence, as the court viewed the matter, showing that respondent was entitled to be subrogated to the ownership of the mortgage interest which was discharged by the use of her money, and after finding the facts in that regard the court ordered the claim to be amended accordingly, and thereon and upon such facts rendered the judgment complained of.

It has been repeatedly held that it is not permissible to entirely change the nature of a cause of action by amendment,—substituting one in equity for one at law, or one on contract for one sounding in tort. *Carmichael v. Argard,* 52 Wis. 607, 9 N. W. 470; *Gilman v. Gross,* 97 Wis. 224, 229, 72 N. W. 885; *Post v. Campbell,* 110 Wis. 378, 85 N. W. 1032; *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Klipstein v. Raschein,* 117 Wis. 248, 94 N. W. 63.

The learned court seems to have supposed that the cause

of action, as originally stated, was in equity and so justified the amendment. The judge said in disposing of the matter: "The case is in equity. It is very much like *Gudden v. Estate of Gudden,* 113 Wis. 297, 89 N. W. 111." Plainly he entirely misconceived that case. It was not an action in equity. It clearly was one to recover on contract for money loaned. If the evidence here, in any reasonable view of it, established a cause of action in respondent's favor, it was purely equitable to recover in the right of the mortgagee to whom the money was paid. However, it is difficult to discover facts found, or established, sufficient to support such an action. Moreover, while the court ordered respondent's complaint,—we so speak of the claim filed,—amended so as to form a basis for a recovery upon the ground of subrogation, it seems that the judgment was not appropriate thereto. The equitable right could not reach beyond the property conserved by the payment of the money to discharge the lien thereon or some property into which it was converted and in which it could be identified. No mere money demand was created by the payment of the mortgage. There was no proof here that the property conserved was possessed by the husband at the time of his death, either in the form it was in at the time of the payment of the mortgage or in any other. The learned court seems to have supposed that if the respondent was subrogated to the rights of the mortgagor that included an equitable transfer of the money demand against her husband so that she could sue upon it. Obviously, the equitable assignment went no further than the mortgagor's interest in the property, the debt itself being merely kept alive so far as necessary to support the lien, not so as to constitute in the hands of respondent any legal claim whatever.

The trial court went beyond the law of subrogation in this case. If one is compelled to pay a debt for which he is not personally liable in order to protect his interest in the property upon which such a debt is a charge superior to such

interest, he thereby becomes equitably entitled to have the prior lien preserved and enforced as the original owner might have had it enforced, so far as necessary for his protection against loss. *Watson v. Wilcox,* 39 Wis. 643; *McLaughlin v. Estate of Curts,* 27 Wis. 644; *Morgan v. Hammett,* 23 Wis. 30; *Levy v. Martin,* 48 Wis. 198, 4 N. W. 35; *Wilton v. Mayberry,* 75 Wis. 191, 43 N. W. 901; *Cockrum v. West,* 122 Ind. 372, 23 N. E. 140; *Royal Arcanum v. Cornelius,* 198 Pa. St. 46, 47 Atl. 1124; *Lowrey v. Byers,* 80 Ind. 443; *Goldsmith v. Stewart,* 45 Ark. 149; 7 Words & Phrases, 6721.

Rightly understood, subrogation existed entirely independent of contract relations. It is wholly a creature of equity,— a mere means by which the substantial ends of justice may be accomplished. If a person pays off a lien claim on property for which he is not but another is liable so that such other would derive the benefit thereof, if his interest in the property were entirely relieved from such lien, and such person acts in the matter, not as a mere volunteer, but to protect his own interest in such property, such interest being legal or equitable, and either present or contingent, equity immediately operates in favor of such person by preserving such lien claim to him with the same right to enforce it as the original owner possessed, to the extent that such person would otherwise suffer loss to such other's gain. Such enforcement in the hands of the equitable assignee is, in effect, asking for something in the right of the equitable assignor. The scope of the right is not enlarged to the gain of nor diminished to the prejudice of the equitable assignee by its devolution from one to the other. If a person paying off the lien is secondarily liable for the debt, there springs out of the transaction an implied promise by the one primarily liable to repay the money. That does not rest on the law of subrogation. It is enforcible as a legal liability, but where the payment is merely to protect the interest of the payor, as in this case, equity only

operates to keep alive the lien upon the property for the benefit of the payor.

Here we are speaking of the right acquired by the mere circumstance of payment under the circumstances indicated, not of the right one might have if the person receiving the payment, voluntarily recognizing the equity of the situation, or being compelled to do so by equity jurisdiction, as might be done in some circumstances, assigns the legal claim against the person primarily liable therefor. In such circumstances, of course, the right to be clothed with the title to the legal claim rests on the law of subrogation, but so long as there is no transfer, other than by devolution by operation of equity from the mere circumstance of payment, the person possessing the equitable title can only follow the property upon which the charge rests by the use of equity jurisdiction. In case of payment of a mortgage lien, as in this instance, no right to an assignment of the legal claim or assignment of the mortgage by act of the mortgagee exists. Sheldon, Subrogation, § 45. That is so because the devolution of the mortgage lien and equitable preservation of the indebtedness, so far as necessary to support it, is all that is required for the protection of the one making the payment. The right by subrogation, as we are now treating it, is entirely inconsistent with the continued existence of the legal claim against the mortgagor, because it springs out of the circumstance of the legal claim being extinguished. Sheldon, Subrogation, § 6. Thus, in any view of the law, it will be seen that the only right respondent acquired by the act of her having paid the debt of her husband secured upon the homestead was limited to an enforcement of the mortgage lien as to the mortgaged property, or its equivalent in a changed form into which it could be traced and identified.

It would seem without authority that the principles of subrogation should apply to a case where a married woman having an interest in a homestead, the title to which is in her

husband, and which is incumbered by a mortgage to secure his debt, without request by him, but solely to protect her homestead right, pays off the incumbrance, and the authorities so hold. *Jefferson v. Edrington*, 53 Ark. 545, 14 S. W. 99, 903; *Smith v. Hall*, 67 N. H. 200, 30 Atl. 409; *Ohmer v. Boyer*, 89 Ala. 273, 7 South. 663.

If we could successfully pass in favor of respondent the entire change in the theory of the cause of action, which occurred as before indicated, and the rendition of a judgment upon the one that the legal claim against the mortgagor passed to respondent as a result of her paying the same, or that such payment created a new such claim so that it could be enforced as a money demand in favor of respondent, and that too without any proof whatever that the mortgaged property, *in specie* or in a converted form, could be identified as forming a part of the estate of her deceased husband, there would yet be an insuperable obstacle in the way of a recovery by reason of the statute of limitations, as we shall see.

Counsel for appellant insist upon the statute of limitations as a defense, though conceding that according to the decisions of this court such defense is not available in an action between husband and wife, and request reconsideration of our decisions in that regard. Counsel seem to concede more than is respondent's due under the facts of this case. If that were not true, it is too late to reconsider the question of whether the statute of limitations operates on a transaction between husband and wife giving rise to a cause of action between them. It should be noted that our decisions, when applied to the facts of the cases in which they were made, have not gone further than that. The common-law rule is that the limitation statutes do not run against a married woman, subject to the exception that where it has commenced to run on a cause of action the intervening circumstance of marriage will not interrupt it. The rule in its origin was grounded on the disabilities of coverture. In our statute of limitations

at first (ch. 127, R. S. 1849), adopted when married women were yet under such disabilities, in harmony therewith, they were expressly exempted therefrom (subd. 4, sec. 12, ch. 127, aforesaid). That was carried into the statute of 1858 (subd. 4, sec. 29, ch. 138). In *Wiesner v. Zaun,* 39 Wis. 188, although the disabilities of coverture giving rise to such common-law rule had been abrogated by statute, the circumstance that the legislature had not also repealed the statutory exemption from the limitation statute as to married women was so strongly indicative of a purpose to preserve it, notwithstanding such abrogation, it was decided that the court was not warranted in holding that such statutory exemption was repealed by implication. That was affirmed in *Westcott v. Miller,* 42 Wis. 454. It may be that such situation led to the omission of such exemption in the revision of 1878, when the law took the form now found in sec. 4233, Stats. 1898. Revisers' Notes, p. 290. However in *Second Nat. Bank v. Merrill,* 81 Wis. 151, 50 N. W. 503, where a transaction between husband and wife was involved, without referring to the statutory and judicial history we have detailed, but on the ground of public policy, it was said that "the statute of limitations does not run against a wife, and presumption of payment by lapse of time does not prevail against her." The reason assigned is somewhat novel, but the case was followed in *Fawcett v. Fawcett,* 85 Wis. 332, 55 N. W. 405, and again in *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681, though the court in the latter case declined to accede to the doctrine as right, except in that lapse of time had made it a rule of property. Each of the last three cases stated arose out of a transaction between husband and wife. We are constrained not to extend the doctrine thereof so as to cover a cause of action not so arising, and upon which the limitation statute commenced to operate before the parties became adversaries in respect thereto. Generally speaking, such a statute is not subject to any exemption whatever not found in the written law. *Pietsch v. Mil-*

*brath,* 123 Wis. 647, 101 N. W. 388. But the judicial exemption firmly intrenched here by *Brader v. Brader, supra,* within the scope of the cases where it has been applied, must be adhered to. Enough has been said to see that it is not applicable to the facts here, and if that were not so the difficulty with respondent's position would still remain, as we shall see.

As has been indicated, the right acquired by respondent by the payment of the mortgage indebtedness was a privilege to use the mortgage lien to recover the money back out of the mortgaged property,—one unlike the case where a person secondarily liable for an indebtedness pays off the same. In such circumstances, as we have seen, by the equity of the law, privity is created between the payor and the primary debtor essential to contractual relations. The right of subrogation merely justifies the payor in asserting the mortgage right of the payee, which, though extinguished, is kept alive as an equitable charge for the benefit of the latter. The statute of limitations commences to run on a cause of action on implied contract, where one accrues in the manner stated, upon the happening of circumstances creating the implied promise, and upon such cause of action being extinguished by the statute of limitations, the equitable right of subrogation to the use of securities incident to the contract right falls also. If there is merely the right of subrogation to an interest in property, not incident to any legal right, as in this case, the statute of limitations commences to run upon the cause of action at the time it accrues to the person from whom it was derived by subrogation. The devolution of such cause of action does not interrupt the running of the statute. Upon the termination of the full statutory period measuring the life thereof, it is destroyed. *Rittenhouse v. Levering,* 6 Watts & S. 190; *Arbogast v. Hays,* 98 Ind. 26; *Kreider v. Isenbice,* 123 Ind. 10, 23 N. E. 786; *Fink v. Mahaffy,* 8 Watts, 384; *Joyce v. Joyce's Adm'r,* 1 Bush, 474; *Boevink v. Christiaanse* (Neb.)

95 N. W. 652; *Walker v. Vaudry,* 4 Rob. (La.) 395; Sheldon, Subrogation, § 110; Harris, Subrogation, § 841. To enable a person to see what interest one has in the property of another by the right of subrogation he must look at the matter from the viewpoint of the original owner before the devolution.

Harris at the section above cited, using *Walker v. Vaudry, supra,* as an illustration, says:

"Plaintiff being subrogated, as he was, to all the rights of A., can have and exercise no greater rights than he had. This is a cardinal principle in all cases of subrogation."

The court said in the illustrative case:

"Howe, who had obtained his judgment against Vaudry on the 16th day of December, 1840, could not have brought a revocatory action against him on the 31st day of October, 1842. It is equally clear, that if Howe could not do it, Walker cannot; for a person subrogated to the rights of another, cannot have any other or greater rights than the latter had."

In *Boevink v. Christiaanse, supra,* the court pointed out distinction between the operation of the statute of limitations where there is the mere right of subrogation to the interest of a mortgagee in property and where there is a legal claim with the equitable right by the law of subrogation to use a mortgage lien, though extinguished as to the mortgagee, as an aid to the enforcement of such claim. It was said that in the latter case the right to enforce the security will in no event survive, as regards the statute of limitations, the right to enforce the claim, and in the former that it will not survive the limitation period upon the cause of action to enforce the security itself, measuring from the maturity of such security. In that instance there was a mortgage with the equitable right to enforce the lien, obtained as in this case, and it was held that the cause of action, in that regard, dated from the maturity of the mortgage.

We must distinguish not only between a cause of action to enforce a security by right of subrogation in aid of realizing on a legal claim, and such a case where there is no such claim, but between a cause of action based on the security and the cause of action to enforce it. The situation is similar to where a person sues in behalf of himself and others to enforce a cause of action existing in favor of a third person in which the plaintiff and his associates have an interest that can only adequately be thus protected. The cause of action to be enforced is one thing, the cause of action to enforce it is another; neither can survive the death of the other.

So it will be seen that the limitation period upon the enforcement of the mortgage paid off by respondent expired long before her claim was filed in the proceedings to settle her husband's estate and long before his death, unless her rights in that regard were saved by the exception in favor of married women, as regards the statute of limitations. The fact that she made the payment in 1870, because of a threatened foreclosure, shows that the mortgage had previously matured, and that the cause of action thus created, so far as it could be deemed alive at all, was some thirty years old at the time of the commencement of this proceeding. The life of such a cause of action is limited to twenty years. Sec. 4220, Stats. 1898.

The respondent here, if she could recover at all, could only do so in the right of the mortgagor to whom she made the payment. The only cause of action which arose upon the making of such payment was one to enforce the cause of action upon the mortgage possessed by the mortgagee at the time of payment. Obviously, had the mortgage not been paid off, the mortgagee could not have enforced it at the time this action was commenced. The limit of his right under such circumstances was the limit of respondent's, because since the statute of limitations had commenced running against the mortgage before she became the equitable owner of the lien,

such devolution did not interrupt its running. As we have said, where once the statute of limitations has commenced to run on a cause of action, no circumstances not expressly provided by statute—and we have no statute applying to the circumstances here—will interrupt it. Wood, Limitations (3d ed.) sec. 6.

"The course of decisions, both in England and in this country, has established the rule -beyond doubt, that when the .statute of limitations has commenced running [save as otherwise provided by the written law], it runs over all subsequent disabilities and intermediate acts and events." "Nor is there any difference between a voluntary and involuntary disability." *Dekay v. Darrah's Adm'rs,* 14 N. J. Law, 288.

So in any way we can view this case the respondent had no cause of action when she filed her claim.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to render judgment in favor of appellant.