No. 35,110

J. C. TILLOTSON, Administrator of the Estate of Susan Goodman, Deceased, *Appellee*, v. GEORGE W. GOODMAN et al., *Appellants;* ROBERT W. LEIDIG et al., *Cross-appellants.*

(114 P. 2d 845)

Opinion filed July 5, 1941.

*J. F. Bennett* and *Robert W. Hemphill*, both of Norton, for appellant George W. Goodman.

*W. L. Sayers* and *W. P. Sayers,* both of Hill City, for the appellee.

*W. S. Rice*, of Smith Center, for cross-appellant Lottie A. Leidig.

The opinion of the court was delivered by

THIELE, J.: This was an action to foreclose a lien on real estate, the existence of the lien depending on a right of subrogation growing out of the following facts.

On June 30, 1932, the defendant George W. Goodman was a widower, and the owner of a tract of land in Norton county, Kansas, which was subject to an indebtedness for $2,335 secured by a mortgage held by one Erma B. Finley. Susan Simpson was a widow on

the above date. The two persons, in contemplation of marriage to each other, entered into a written agreement, reciting:

"ANTENUPTIAL AGREEMENT

"This agreement made and entered into this 30th day of June, 1932, by and between G. W. Goodman of Lenora, Kan., of the first part, and Susan Simpson of the second part.

"Witnesseth: That in consideration of the agreements herein made, it is understood by and between the parties that the second party, upon the marriage to the first is to pay the sum of $2,335 to be applied to the payment of a mortgage now on the following-described real estate: The south half (S ½) of the southeast quarter (SE ¼) and the east half (E ½) of the southwest quarter (SW ¼) of section 16, in township 5, south, range 23, west of the 6 P. M., in Norton county, Kansas. The said amount of $2,335 to be paid out of the estate of said G. W. Goodman to the second party, Susan Simpson, without interest.

"It is further agreed that each of the parties hereto waive all right, title, interest and ownership in and to the estate of the other except as to the payment of the said $2,335 herein mentioned.

"It is further agreed that in the event of the death of Susan Simpson, that the said G. W. Goodman will pay the said amount of $2,335 to her estate within twenty-four months after her decease.        G. W. GOODMAN,
                                                                                                                              MRS. SUSAN SIMPSON."

The marriage took place as planned, and shortly thereafter Mrs. Susan Simpson Goodman complied with her part of the agreement and paid the indebtedness to Erma B. Finley and the mortgage was released of record. Mrs. Goodman died intestate on September 8, 1937, and thereafter J. C. Tillotson was appointed and qualified as the administrator of her estate. Shortly after his wife's death, the defendant, George W. Goodman, executed a mortgage on the real estate to secure a note for moneys used for purposes other than paying the amount due under the antenuptial agreement. The twenty-four months' period mentioned in the last paragraph of the agreement having expired, and George W. Goodman not having paid to his wife's estate the amount of $2,335, the administrator commenced an action against George W. Goodman and one Lottie A. Leidig, as guardian, holder of the last-mentioned mortgage, and others, the amended and supplemental petition alleging, among other things, the making of the agreement, the failure of Goodman to comply; that Goodman on May 26, 1939, had filed his voluntary petition in bankruptcy for the purpose of procuring a discharge from the payment of the above obligation under which he claimed a homestead exemption and had procured an order setting aside the above-described lands as exempt property; that Goodman was insolvent and it would be inequitable for him to retain the real property free of

the claim; that Susan Goodman was the wife of George W. Goodman and occupying the real property as her home at the time she paid the $2,335, and equity required that a lien be impressed on the real estate to secure payment; that controversy existed between the parties as to plaintiff's right to a lien; that the indebtedness became due under the agreement on September 8, 1939, with interest thereafter at six percent. The prayer was that the indebtedness be adjudged to be a lien, the lien foreclosed, etc.

Lottie A. Leidig, guardian, as holder of the mortgage, made after the death of Mrs. Goodman, filed her answer and cross petition. It may here be noted she was given a first lien on the real estate. By stipulation there is no controversy respecting that part of the judgment, and her cross-appeal is dismissed.

Goodman's demurrer to the above petition was overruled, and that ruling is assigned as error. It will be mentioned later. Goodman's answer admitted plaintiff's appointment as administrator; that he owned the real estate described; that he and Susan Goodman were married July 1, 1932, and lived together until her death September 8, 1937; that the antenuptial agreement was made; that Susan Goodman paid the $2,335 mortgage indebtedness, and he further alleged that she did not intend she should obtain a lien on the real estate nor be subrogated to the rights of the mortgagee whose mortgage she paid, but did intend that the mortgage should be released absolutely and the lien thereof fully discharged and extinguished.

At the trial evidence was introduced covering the entire matter presented by all pleadings, that pertaining to priority of the Leidig mortgage now being immaterial. Goodman's demurrer to plaintiff's evidence was overruled and that ruling is assigned as error and will be mentioned later. The trial court made findings of fact and conclusions of law, which are summarized as follows:

The first finding dealt with Goodman's ownership of the land and the execution of the mortgage held by Erma B. Finley on which there was due on June 30, 1932, the sum of $2,335. The second finding dealt with the execution of the antenuptial agreement and its terms. The third finding is that Susan Simpson Goodman died September 31, 1937, and that George W. Goodman had not paid her estate the sum of $2,335. The fourth finding deals with proceedings with respect to Mrs. Goodman's estate and is not material here. The fifth finding recites:

"Shortly after the marriage of said G. W. Goodman and Susan Simpson, the said Susan Simpson Goodman paid from her sole and exclusive funds the sum of $2,335 upon the aforesaid mortgage to said Erma B. Finley and said mortgage was released of record. The court finds from all the facts and circumstances and from the contract entered into between said parties that it was the intention of the parties that Susan Simpson Goodman be substituted and subrogated to the rights of the said mortgagee Erma B. Finley, and that equity, justice and good conscience require that she be substituted and subrogated to the right of said mortgagee and that the plaintiff as administrator of her estate is entitled to be substituted and subrogated to all of the rights which the said Susan Simpson Goodman might have were she now alive."

The sixth finding concerns George W. Goodman's matters in bankruptcy, and concludes:

"The court finds that said bankruptcy proceeding was had solely for the purpose of avoiding or attempting to avoid the payment of the obligation said Goodman owed to the estate of said Susan Simpson Goodman, deceased. Except for the above-described land, the defendant Goodman would be insolvent, and the court finds that it would be unjust, inequitable and unconscionable for him to now retain said land free from the indebtedness which he owes the estate of his deceased wife."

The seventh finding is that after the marriage Mr. and Mrs. Goodman occupied the real estate as their homestead and were living there when she paid the $2,335 to the mortgagee Finley, "and that said sum was paid at the request of said Goodman and to protect the interests of both said husband and wife in and to their homestead."

Findings eight, nine, eleven and twelve deal with the Leidig mortgage. Finding ten is as follows:

"W. L. Leidig, managing officer of said bank, talked with Susan Simpson Goodman several times between the time of her marriage to Goodman and her death, in which she told Leidig that she and Goodman agreed that she should have no lien upon the real estate involved in this litigation and that she did not want Goodman to mortgage his land as he would be unable to pay it and have nothing to support himself in his old age. The court finds that the statement of Mrs. Goodman that she and Goodman had agreed that she should not have a lien on the real estate involved, is of no legal force as it would tend to vary and change the terms of the written antenuptial agreement."

The court concluded the Leidig mortgage was a first lien in the amount of $1,100, and—

"II. That the plaintiff in justice, equity and good conscience should be and is substituted and subrogated to all of the rights of the mortgagee Erma B. Finley for the sum of $2,335 with interest from September 8, 1939, to date, and the said lien should be foreclosed second and subsequent only to the aforesaid note and mortgage of $1,100.

"III. That the court should render judgment for the respective parties in accordance with the findings and conclusions."

and judgment consistent with the findings and conclusions was rendered.

Goodman's motion for a new trial was denied, and he appeals.

We note that error is specified on the overruling of the demurrer to the amended petition; on the ruling that the petition stated a cause of action for subrogation; and on the overruling of the demurrer to plaintiff's evidence. The correctness of these rulings is inherent in matters hereafter to be mentioned and they will not be further discussed here.

It is further contended that finding of fact No. 5 is not supported by the evidence and that it is contrary to the evidence. The argument that it is contrary to the evidence is based on the conversations with W. L. Leidig, summarized in finding No. 10, that finding also being attacked, as is mentioned later. Assuming competency of the testimony in finding No. 10, it still remains there was other testimony which tended to support the specific finding of fact drawn therefrom. The latter part of the finding may cover a mixed finding of fact and of law, but it is not subject to being ignored for that reason. Finding of fact No. 10 is attacked as being contrary to law and contrary to the evidence. Technically, if it is contrary to the evidence and is set aside, it will not avail the appellant. An examination of the record discloses W. L. Leidig did testify as found by the trial court, and if competent, the finding would be in some conflict with finding No. 5. No authority is cited by appellant to support his contention that the trial court erred in its ruling and we are not persuaded that it did. But had it done so, it would not compel a reversal. Even though Mr. Leidig did testify as set forth, other evidence showed that George W. Goodman had written a letter to his wife's daughter that his wife was continually demanding a settlement. It is also disclosed he invoked bankruptcy proceedings to avoid his liability. There is no testimony of any sort that Mrs. Goodman ever told her husband she waived her claim, nor that they ever agreed for consideration or otherwise that their antenuptial agreement should be canceled, set aside or held for naught. Perhaps the statements were admissible on the ground they were admissions against interest, but that is not contended, but so received they must be held to have been considered by the trial court in reaching the conclusion expressed in finding of fact No. 5.

The remaining specifications of error all deal with the question whether a lien exists in favor of Susan Goodman's estate against the real estate described in the antenuptial agreement. Appellant first contends the court was without power to declare the indebtedness a lien on the homestead for the reason that such a lien can only be created in the manner prescribed in the constitution of this state (const., art. 15, sec. 9). It is a sufficient answer to say the original mortgage held by Erma B. Finley was concededly valid, and it is that indebtedness to which Mrs. Goodman's estate was held to be subrogated.

Appellant directs our attention to a general rule that the doctrine of subrogation requires that one seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights and in doing so must not act as a mere volunteer but on compulsion, and to save himself from loss by reason of a superior lien or claim on the part of the person to whom he paid the debt, and therefrom he argues that Mrs. Goodman was under no duty to pay the debt of her husband; that she was a mere volunteer, hence she, or her representative, may not invoke the doctrine. It is true that Susan Simpson (Goodman) did not have to marry George W. Goodman, and that she did not have to enter into the antenuptial contract with him, but that she did so did not constitute her a mere volunteer. Suppose she had married without any agreement whatever, she might well have paid the indebtedness against the farm in order to preserve her homestead right therein under circumstances warranting application of the doctrine of subrogation. Application of any equitable principles whatever would require that consideration be taken of the fact that George W. Goodman's position, if not made better, was at least as good if his wife had a lien on the property as if the lien possessed by Erma B. Finley remained with her. The fact is undeniable, however, that under the antenuptial contract his position was improved, for he was relieved from payment of the principal and all interest otherwise accruing from the time his wife paid Mrs. Finley until a period of two years after his wife's death.

The legal principles involved in the case at bar are quite similar to those in *Katschor v. Ley,* 153 Kan. 569, 582, 113 P. 2d 127, where a considerable review of the authorities was made. What is there said need not be repeated. It was there held:

"The right of subrogation is not founded upon contract alone, nor upon the absence of contract, but upon the facts and circumstances of a particular case

and upon principles of natural justice, and generally when it is equitable that a person furnishing money to pay a debt should be substituted for the creditor, such person will be so subrogated.

"Where subrogation is claimed on the ground that payment was necessary to protect the interests of the subrogee, the extent or quantity of the interest which is in jeopardy is not material." (Syl. ¶¶ 3, 4.)

In addition to the authorities cited in the case last mentioned, we note the holding in *Martin v. Hickenlooper et al.*, 90 Utah 150, 59 P. 2d 1139, 61 P. 2d 307, 107 A. L. R. 762, the facts of which need not be reviewed, that subrogation is founded on the principle that one cannot enrich himself at the expense of another by getting free of a debt by permitting the other, not so fundamentally or primarily bound, to pay the debt; but that the matter is one of comparative equities; that the roots of the doctrine are in the soil of justice and equity and not in contract and hence only inexcusable or unjustifiable or culpable negligence will bar application of the doctrine. A case quite similar to the one at bar was *Charmley v. Charmley*, 125 Wis. 297, 103 N. W. 1106, where subrogation was invoked to protect the rights of a widow where her deceased husband, during his lifetime, had purchased a homestead for himself and wife, assuming a mortgage thereon which the wife paid to protect her homestead interest, but not intending to relinquish her right to repayment. (See, also, *Hermance v. Weisner*, 228 Wis. 501, 279 N. W. 608, and annotations in 103 A. L. R. 1177 and 107 A. L. R. 762, where many cases dealing with right and extent of subrogation may be found.)

From the record it is clear that the purpose of Mrs. Goodman in paying the mortgage indebtedness against the real estate was to protect it as the homestead of herself and husband, and that it was intended she should be repaid cannot be disputed — the antenuptial contract settled that. The testimony fully warranted the facts as found by the trial court, and those findings fully warranted application of the doctrine of subrogation.

The judgment of the trial court is affirmed.